MARTIN COYLE AND LOUIS CAPPOZZOLI, COMPLAINANTS–
RESPONDENTS, v. ERIE RAILROAD COMPANY,
DEFENDANT–APPELLANT.

Argued January 10, 1949—Decided January 24, 1949.

Mr. *Charles W. Broadhurst* argued the cause for the defendant-appellant (*Messrs. Markley & Broadhurst,* attorneys).

Mr. *Archie Elkins* argued the cause for the complainants-respondents.

The opinion of the court was delivered by

VANDERBILT, C. J.   The defendant railroad has appealed from a decree of the former Court of Chancery ordering the rein-

statement of the complainants in its employment and permanently restraining it from retrying them upon certain charges of insubordination.

The complainants had been employed as baggage porters by the defendant for a few years, except for the interim in which each was in military service, until November 20, 1947, when they were dismissed. Their dismissal arose out of these facts: At about 10 P.M. on October 11, 1947, the complainants, together with a fellow employee, Whaley, were instructed by their superior, Hastings, to load mail bags into one of a string of cars then in the Jersey City Terminal of the defendant and scheduled to depart at 12:30 A.M. They loaded four large four-wheeled hand trucks with mail bags and then pulled them from the mail platform to a point near the car which was to be loaded. Upon discovering that the car was a refrigerator car and not a mail car, the complainants and Whaley immediately protested to Hastings that they believed it to be the wrong car, but if it were not "it was very dangerous if we had to work there, and we needed a plank according to Rule 402" of the Working Rules and Regulations of the defendant railroad. The plank was requested because of the fact that the floor of the hand truck was approximately two feet below the floor of the refrigerator car, and the truck was away from the car about one and one-half feet. Hastings made inquiries to see whether or not the refrigerator car could be changed for a small car and then informed the complainants that such a change was not possible. All four of them then went to the location of the refrigeration car and Hastings suggested that two of the men stand inside of the car and the third hand the bags from the truck to the two inside. The three employees then told Hastings that if they did it that way they would be violating the rules of the defendant and that they might be injured if they slipped and fell. Thereupon Hastings told them again that the car could not be changed, that he had no plank, and that they should either work the way he suggested or go home. The three employees thereupon left their job and changed their clothes, telling Hastings that they would return the following night. Hastings replied that they were

not to come back until they had seen Mr. Dooley, the station master.

Inasmuch as October 12th was a Sunday and the 13th was a holiday, the three employees did not report to Dooley until October 14th, when they were told that Dooley was very busy and had no time to see them then. In the meantime, Dooley had requested the trainmaster, Sanok, to make an investigation of the occurrence. The latter thereupon prepared notices to each of the three employees, notifying them to appear at his office on October 16th for an investigation "in connection with your refusal to carry out instructions of" Hastings. On October 15th the complainants returned to see Mr. Dooley who, at that time, handed them the notices prepared by Sanok. The complainants claim that they then asked Dooley the reason for the haste and that Dooley replied that since they were then there they might just as well go up and get the investigation over with that day "because it is just a matter of formality." The complainants thereupon went to Sanok's office where they remained from about 5 until 7:30 or 8 P.M., at which time they were questioned by Sanok in the presence of Dooley. Neither Whaley, the third employee, nor Hastings, their superior, was present, although statements which had been taken previously from each of them were read to the complainants by Sanok. The complainants asked why Hastings was not present, to which Sanok is alleged to have replied that it was just a matter of routine and that it was not necessary for Hastings to be present. Thereafter Sanok turned over to Dooley the statements of each of the three employees and of Hastings, along with an additional statement taken from Whaley on October 16th. Dooley, after receiving them, recommended to the superintendent of the defendant that the complainants be dismissed and that Whaley be suspended for five days. The Superintendent thereafter dismissed the complainants for refusing to perform work as instructed and suspended Whaley for ten days. After receiving formal notice of their dismissal, the complainants attempted to see the superintendent but without success. Coyle then spoke to Dooley about writing to the main office of the Company in Cleveland, to which Dooley is said to

have replied that it would not do any good because they would not "change their minds."

The complainants then filed their bill of complaint seeking to compel their reinstatement as/of October 11, 1947. An answer was filed by defendant which, among other things, objected to the jurisdiction of the court to compel reinstatement. At the final hearing the court found that the complainants had not been accorded a fair trial pursuant to the terms of the Working Agreement with the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, and that on the merits the complainants were innocent of the charge made against them of refusing to comply with the orders of their superior. A decree was entered ordering the reinstatement of the complainants as of October 11, 1947, with back pay and permanently enjoining the defendant from "in anywise retrying the complainants on the same charges." Defendant appeals on the grounds (1) that the provisions of the Brotherhood Agreement do not entitle employees to a hearing in the technical sense; (2) that Chancery did not have the jurisdiction to try the charges *de novo* or to fix the punishment to be imposed; and (3) that the dismissal of the complainants was warranted under the facts.

The pertinent portions of Rule 41 of the Working Agreement between the Brotherhood and the defendant railroad provide:

"(a) Employes covered by these rules, * * * shall not be disciplined by record, suspended * * * or dismissed without proper investigation. Investigation shall be held *as promptly as* circumstances will permit, the employes being notified in writing, in advance, of the charge and time of investigation.

"Employes may have witnesses of their own choice * * * present and shall have the right to be represented by the duly accredited representative * * *

"(b) Evidence pertaining to the case will be made available by the Management to the representative of the employes * * * "

Although the language of the quoted rule does not provide for a hearing in the technical sense of a court proceeding, there can be no doubt that the terms of the rule were not complied with. The provision for notice "in writing, in ad-

vance, of the charge and time of investigation" coupled with "the right to be represented by the duly accredited representative" clearly imply such notice as will give the employees a fair opportunity to get in touch with representatives and to prepare their defense. The one day's notice given on October 15th to appear on October 16th is obviously inadequate, *Schlenk v. Lehigh Valley Railroad Company*, 1 *N. J.* 131, The statements of Hastings and Whaley were read to the complainants, but neither was present, despite the fact that the complainants asked why Hastings was not there. They obviously desired to question Hastings and it would seem that they were fairly entitled to do so either under the contract provision giving them the right to "have witnesses of their own choice * * * present" or under the clause providing that "evidence pertaining to the case will be made available." The defendant railroad has failed to comply with the terms of the contract with the Brotherhood in the investigation. Damages at law would furnish an inadequate remedy for the breach of the Brotherhood contract resulting in the complaints' loss of position, retirement and pension rights. The learned Vice Chancellor was clearly right in setting aside the discharge of the complainants and in ordering their reinstatement, but only pending a proper investigation pursuant to the terms of the Brotherhood contract.

The court below, however, proceeded, as in the *Schlenk case,* to a hearing on the merits of the discharges. That was a matter beyond the competence of the former Court of Chancery. As was said in the *Schlenk case:*

"Equity has no inherent jurisdiction over the relation of employer and employee. Each is free, in the absence of contract or statute, to discontinue the relation at will, with or without cause. Where a contract exists, however, equity has the power, as it did here, to protect the complainant from the consequences of a hasty trial without being represented, in violation of the contractual provisions * * *

"Nor has equity power to determine, * * * the extent of the discipline the employer may impose as a condition of the employee remaining in his service or to curb the employer's right to dismiss his employee."

The decree below will be reversed and a judgment will be entered, directing the reinstatement of the complainants as

of October 11, 1947, with back pay, retirement and pension rights, and enjoining the defendant from conducting an investigation of the charges against the complainants except in conformity with the terms of the Brotherhood contract.

*For reversal:* Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance:* None.