Donald K. ROBINSON, Plaintiff,

v.

WINSLOW TOWNSHIP, Chief of Police Anthony Bello, Detective Al Pickul Sergeant Anthony Ortiz, John Does (1–10) (f/n), Supervisory Officers of the Winslow Township Police Department, Jane Does (1–2)(f/n), Employees of the Winslow Township Police Department Responsible for Complying With Discovery Demands, Camden County Prosecutor Edward Borden, Assistant Camden County Prosecutor Sally Smith, Assistant Camden County Prosecutor Ira Slovin and Sam Does (1–10)(f/n), and Employees of the Prosecutors Office With Prosecutorial Decision–Making Authority, j/s/a, Defendants.

Civ. A. No. 94–3749(JBS).

United States District Court,
D. New Jersey.

June 24, 1997.

Mark S. Gertel, Ballen, Gertel, & DiCintio, Cherry Hill, NJ, for Plaintiff.

John H. Adler, Adler, Gold, Taylor & Hagner, Cherry Hill, NJ, for Defendants Winslow Township and Chief of Police Anthony Bello.

James A. Tamburro, Margolis Edelstein, Westmont, NJ, for Defendant Sergeant Anthony Ortiz.

SIMANDLE, District Judge.

Plaintiff, Donald K. Robinson, brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Winslow Township, Winslow Township Chief of Police Anthony Bello, several members of the Winslow Township Police Department, and several members of the Camden County Prosecutor's Office. Plaintiff alleges generally that these defendants violated his due process and other constitutional rights in charging him with a crime he did not commit. (Am. Compl. at ¶ 63). Plaintiff also asserts pendent state-law claims for malicious prosecution against the defendants. All claims and cross-claims against defendants Slovin, Smith, and Borden were voluntarily dismissed by Stipulations filed November 25, 1996, December 10, 1996, and December 17, 1996. Also, plaintiff's claim for punitive damages against defendant Winslow Township was dismissed by Order filed April 12, 1995.

Presently before the court are two motions for summary judgment, filed pursuant to Fed.R.Civ.P. 56. One was filed by defendants Winslow Township (the "Township") and Chief of Police Anthony Bello ("Chief Bello"), and the other was filed by defendant Sergeant Anthony Ortiz. Both motions seek judgment as a matter of law on plaintiff's § 1983 claims and plaintiff's malicious prosecution claims.

## I. *Background*

On June 10, 1991, a robbery occurred at a WaWa convenience store ("WaWa") located on New Brooklyn Road in Winslow Town-

464

ship, New Jersey. (Am.Compl.¶ 16). The perpetrator struck the store clerk in the head with a pipe, took money from the cash register, and fled on foot. (Pl.Ex. 8).

Defendant Detective Al Pickul of the Winslow Township Police Department was the officer primarily responsible for the investigation of the WaWa robbery. (Pl. Br. at 1). Detective Pickul took field notes at the scene of the crime, in which he recorded the recollections of the eyewitnesses to the robbery. According to Pickul's notes, one witness stated that the perpetrator was a 6'2" black male who weighed approximately 200 pounds. (Pl. Ex. 1, 2). A second eyewitness described the perpetrator as a six-foot-tall Puerto Rican male weighing about 160 pounds. (Id.). A third witness stated that the larcenist was a 5'10" black male who weighed approximately 150 pounds. (Id.). The perpetrator was also described as being muscular and as having a faint moustache. (Id.).

The Winslow Township Police Department subsequently issued a press release concerning the WaWa incident. The press release described the perpetrator as a black, adult male with a faint moustache, who is between 5'10" and 6'2" tall. (Pl.Ex. 8). Similarly, defendant Pickul's investigation report described the assailant as a "light skinned black male, ... had a thin moustache, and was tightly, but compactly, muscled." (Pl.Ex. 6). Defendant Pickul's report, however, also listed the perpetrator as being 5'8" tall, which is shorter than any of the eyewitness estimates found in Pickul's field notes. (Id.) Plaintiff, Donald K. Robinson, who was eventually arrested and prosecuted for the WaWa robbery, is 5'4" tall and weighs 140 pounds. (Pl.Ex. 15). Plaintiff is a black adult male with a moustache.

Detective Pickul's investigation report also stated that the day after the WaWa robbery, Pickul "was contacted by a confidential source who requested anonymity for fear of retaliation." (Pl.Ex. 6). The report stated that the informant told Pickul that " 'the guy who did WaWa used to live right behind it, in Villa Knoll. That's why he got away so fast, he ran thru the woods.' Source added that accused had a prior criminal record ... in regards to [drug and alcohol-related crimes]." (Id.). According to detective Pickul's deposition testimony, Pickul subsequently concluded that the individual who committed the WaWa robbery was Mr. Robinson, who had previously plead guilty to driving while intoxicated and had also previously been charged with possession of marijuana. (Df.Ex. G, H). Mr. Robinson lived in the Villa Knoll apartments at the time of the marijuana charge. (Df.Ex. H). Defendant Pickul contacted Mr. Robinson's employer, who allegedly informed Pickul that, on the day of the WaWa incident, Robinson had taken the day off for personal reasons. (Df. Ortiz Statement of Undisputed Facts ¶ 16).

Three eyewitnesses to the WaWa incident subsequently viewed police photographs and identified plaintiff, Mr. Robinson, as the man responsible for the robbery and assault. (Am.Compl.¶¶ 35–39). Plaintiff, however, asserts that at least one of the photo identifications was unreliable. Plaintiff points to testimony in the record that indicates that James Sallade, who was the second witness to identify plaintiff's picture, was in the room when the first witness to identify the picture, Maryanne Taglioli, picked out plaintiff's picture from a book of photographs. (Pl.Ex. 4). Sallade testified that plaintiff's photograph was brought over to him when Taglioli picked it out, and that Sallade merely confirmed that the picture was that of the WaWa assailant. (Id.). Nonetheless, following a *Wade* hearing that was held in the criminal action against Mr. Robinson, New Jersey Superior Court Judge Mary E. Colalillo found that the photo identification procedures used in this case did not violate plaintiff's constitutional rights. (Df. Statement of Undisputed Facts ¶ 13; Df. Ortiz Ex. D).

Aside from the eyewitness descriptions, the photo identifications, and the alleged statement of the confidential informant, a final item of evidence in this case is a lighter that defendant Pickul seized from the WaWa store. The police had reason to believe that the assailant may have touched the lighter in question during the course of the robbery. (Pl.Ex. 1). After seizing the lighter from the WaWa, Detective Pickul kept the lighter in a

ziplock bag on his desk. (Pl.Ex. 11).[1] Because Detective Pickul then became involved in other matters, defendant Sergeant Anthony Ortiz volunteered to lift the fingerprints from the lighter and transport the prints and the lighter to the State Police crime lab. (*Id.*).

The lab technician, Sergeant David Blaker, looked at the fingerprints that Ortiz had taken from the lighter and determined that the prints were not identifiable. (*Id.*). Blaker then performed an additional "fuming" procedure on the lighter in an attempt to lift identifiable prints from the lighter. Because of the poor quality of the fingerprint that Blaker was able to lift through this procedure, the print could not be used to identify the WaWa assailant by matching the print with other fingerprints kept in police records. (Pl.Ex. 13). Blaker was, however, able to determine conclusively that the fingerprint on the lighter was not the fingerprint of Mr. Robinson. (*Id.*).

Sergeant Blaker memorialized his conclusions in a report. (Pl.Ex. Q). According to defendant Ortiz, such a report normally would have been sent to the Winslow Township Police Department, where the records clerk would have placed it in Mr. Robinson's case file. (Pl.Ex. 11). Sergeant Blaker has testified, however, that he believes he would have sent the report to defendant Ortiz as the officer who requested the fingerprint information. (Pl.Ex. N). It is unclear what eventually happened to the Blaker report, but it is undisputed that no such report was ever placed in Mr. Robinson's file. (*Id.*). As a result, it was not part of the package of exculpatory evidence delivered to Mr. Robinson's attorney during the criminal prosecution of Mr. Robinson.

Defendant Ortiz also filed his own investigation report concerning his handling of the lighter and the fingerprint evidence. The report states:

ON 6–14–91 AT 10:50 AM I TRANSPORTED A CIGARETTE LIGHTER AND LIFTED LATENT PRINTS TO THE ID LAB IN HAMMONTON. I ALSO TRANSPORTED A COPY ON THE SUSPECT'S PRINTS FOR COMPARISON. THE LATENT PRINTS WERE NOT IDENTIFIABLE. THE PRINT ON THE LIGHTER WAS NOT ABLE TO BE MATCHED WITH THE SUSPECT'S PRINTS. FURTHER INVEST TO BE CONT.

(Pl.Ex. O). Plaintiff claims that the Ortiz report was "materially misleading" because it did not mention that Sergeant Blaker was able to conclude that the print on the lighter was definitely not that of Mr. Robinson. (Pl. Br. at 6).

Robinson was arrested on June 14, 1991, for his alleged role in the WaWa incident. (Am.Compl.¶ 60). That same day, in a criminal complaint signed by defendant Pickul, plaintiff was charged with robbery, aggravated assault, and terroristic threats. (Df.Ex. B). A grand jury subsequently indicted plaintiff, finding probable cause to believe that plaintiff violated numerous provisions of the New Jersey Code of Criminal Justice. (Df.Ex. C). Plaintiff plead not guilty to the charges brought against him.

In May 1992, the prosecutor in the criminal case against Mr. Robinson informed Robinson's attorney that fingerprints had been lifted from a lighter seized from the crime scene, and that the prints on the lighter were found not to be those of Mr. Robinson. (Pl. Ex. J). Mr. Robinson's attorney attempted to obtain a copy of the lab report concerning the fingerprinting, but was unsuccessful in her attempts to do so. (*Id.*).

After a bench trial, on August 11, 1994, plaintiff was acquitted of all charges. (Df.Ex. E).

On August 9, 1994, plaintiff filed the present civil action. (Df. Ortiz Ex. E). According to defendant Ortiz, at that point, Ortiz checked the Robinson case file and found that Sergeant Blaker's report was not contained in the file. (*Id.*). Ortiz then allegedly went to the State Police lab, obtained the report, and made a photocopy of the report

---

**1.** Plaintiff contends that the alleged failure to store the lighter in an evidence locker was a violation of Winslow Township Police standard operating procedures. (Pl. Br. at 6).

for his personal files. (*Id.*).[2]

In the civil complaint filed by plaintiff, he alleges that defendant Pickul targeted plaintiff as a suspect and had him arrested despite the fact that plaintiff did not match any of the eyewitness descriptions contained in Pickul's field notes. Plaintiff also alleges that Detective Pickul concealed his field notes, and, in his investigative report, falsely and inaccurately described the perpetrator of the robbery as a black male, standing 5'8" tall. (Pl.Br.Ex. 6).

Plaintiff's complaint also contains § 1983 claims against Chief Bello and the Township. Plaintiff criticizes those defendants for failing to train Winslow Township police officers to preserve their field notes and to use such notes to verify the accuracy of all investigation reports. Plaintiff asserts that this alleged failure constitutes inadequate training. Plaintiff alleges that Chief Bello and the Township were deliberately indifferent to that inadequacy, thus rendering them liable under § 1983.

Plaintiff further contends that the Township and Chief Bello had a "custom" of not comparing police investigation reports to field notes and press releases in order to ensure the accuracy of the investigation reports. Plaintiff also contends that despite the discrepancies between the eyewitness accounts and Detective Pickul's report, Detective Pickul was never disciplined for making a false statement in a police report. Plaintiff argues that this evidence permits an inference that the police department had a *de facto* custom of avoiding the discovery of false or inaccurate statements contained in police department records. (Pl. Br. at 4).

Plaintiff's complaint also contains § 1983 claims against defendant Ortiz. Those claims allege that Sergeant Ortiz unlawfully suppressed the Blaker report and aspects of the fingerprint evidence. Plaintiff contends that the suppression of such exculpatory evidence in his criminal case violated the Due Process Clause of the Constitution.

In addition, plaintiff's complaint charges Chief Bello, the Township, and Sergeant Ortiz with malicious prosecution.

These three defendants have subsequently moved for summary judgment on all claims against them.

## II. *Discussion*

### A. *Summary Judgment Standard*

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that: "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer*, 72 F.3d at 330 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the

**2.** Ortiz produced the report at the conclusion of his deposition in this case, after initially claiming that he had the report at home. (Gertel Aff. ¶ 11).

moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

B. *The Summary Judgment Motions Brought by the Township and Chief Bello*

The Township and Chief Bello have moved for summary judgment on all claims against them. As noted, plaintiff's claims against these defendants consist of constitutional claims brought pursuant to 42 U.S.C. § 1983 and claims of malicious prosecution brought under New Jersey state law. The court will first address plaintiff's § 1983 causes of action against these defendants.

1. *Plaintiff's Section 1983 Claims Against the Township and Chief Bello*

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

It is axiomatic that a municipality, such as the Township, or a supervisory official, such as Chief Bello, cannot be held liable under § 1983 on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability can be imposed under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" of which the plaintiff complains. *Id.* at 694, 98

S.Ct. at 2037–38. "A plaintiff [bringing suit under § 1983] must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Thus, for the plaintiff to prevail he must show that municipal policy or custom was the "'moving force of the constitutional violation.'" *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38). These same legal standards apply when a § 1983 suit is brought against an individual, such as Chief Bello, for acts carried out by that person in his role as a municipal policy-maker. *See, e.g., Sample v. Diecks*, 885 F.2d 1099, 1117–18 (3d Cir. 1989).

In this case, plaintiff asserts that Winslow Township police officers were not adequately trained in that the Township and Chief Bello failed to "promulgate any policy or training for the preservation of field notes." (Pl. Br. at 15). The Supreme Court has stated that inadequate police training procedures "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The Court explained, "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. at 1205. The Court emphasized that in order to establish § 1983 liability based on failure to train employees, the failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by [the] municipality." *Id.*

In most cases, a plaintiff may demonstrate a municipality's deliberate indifference to the rights of its inhabitants through one of two means. Deliberate indifference may be established where the harm in question occurred on numerous previous occasions and municipal officials failed to respond appropriately. *See Sample v. Diecks*, 885 F.2d 1099,

1118 (3d Cir.1989). Alternatively, "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of [the municipality] to respond will alone support" a finding of deliberate indifference. *Id.*

■ The Third Circuit has explained that this same standard of deliberate indifference applies to § 1983 claims made against supervisory municipal officials. *See id.* ("[T]he standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve.") Whether the claims are raised against a municipality or a municipal policy-maker, such a defendant could not be said to be the "'moving force'" behind the constitutional violation unless the defendant "has exhibited deliberate indifference to the plight of the person deprived [of a constitutional right]." *Id.* (quoting *City of Canton,* 489 U.S. at 389, 109 S.Ct. at 1205). Specifically, the plaintiff must demonstrate that a subordinate's conduct created an unreasonable risk of a constitutional violation, that the defendant supervisor/municipality was aware of that risk and was deliberately indifferent to it, and that the defendant's conduct caused the ultimate injury. *Id.*

■ Under this legal regime established by *Monell, City of Canton,* and *Sample,* the record presently before the court would not permit a reasonable juror to find for plaintiff on his § 1983 claims against the Township and Chief Bello. Plaintiff asserts that his constitutional rights were violated as a result of the failure to adequately train Winslow Township police officers concerning preservation of field notes, use of field notes to verify the accuracy of investigation reports, and inclusion of field notes in the investigation files disclosed to prosecutors and defense attorneys. (Pl. Br. at 15). Plaintiff's claims, however, are unsupported by evidence indicating that the training received by Winslow Township police officers was indeed inadequate. The *Manual of Rules and Regulations* issued by the Winslow Township Police Department provides that "No ... employee shall knowingly falsify any official report or enter or cause to be entered any

inaccurate, false, or improper information on records of the department." (Pl.Ex. 10 at 48). It further provides that "[E]mployees shall not, at any time, withhold any information concerning criminal activity." (*Id.* at 35). In addition, reports filed by Winslow Township police officers are checked for internal consistency, even though such reports are not compared to the field notes on which they were based. (Pl.Ex. 9). Plaintiff apparently contends that such a check for internal consistency and the provisions found in the *Manual of Rules and Regulations* are insufficient, and that proper training procedures would have included instruction to append field notes to investigative reports. Apart from that bare assertion, however, there is no evidence that the Township's training regarding field notes is inadequate.

For example, plaintiff has failed to produce expert testimony that indicates that the Township's training was inadequate in this area. While expert testimony is not absolutely required to prove inadequate training, courts have found such testimony to be significant in determining whether plaintiffs have presented sufficient support for their claims to warrant presentation of the claims to a jury. *See, e.g., Malignaggi v. County of Gloucester,* 855 F.Supp. 74, 78 (D.N.J.1994); *Zuchel v. City of Denver,* 997 F.2d 730 (10th Cir.1993). Plaintiff has indeed submitted a report from a purported expert in criminology in this case, but the report does not lend support to plaintiff's claims. In fact, it contradicts them. Specifically, plaintiff's expert states: "*I do not know of any police standard which requires police field notes to be attached to the investigative file or verified by an investigative supervisor. A police department may require such a practice. The [Township] has not implemented such a practice.*" (Pl.Ex. P at 5 (emphasis added)). In short, there is no evidence in the record on the basis of which a reasonable juror could conclude that the police training conducted by Township or Chief Bello was inadequate or contrary to accepted practice.

Moreover, even if the court were to assume for the sake of argument that evidence of inadequate training could be found in this record, there is no evidence that these defen-

dants were deliberately indifferent to any such inadequacy. As far as the court is aware, of all the persons deposed in conjunction with this case, none testified that they knew of prior incidents similar to those that allegedly occurred during the investigation and prosecution of Mr. Robinson. (*See, e.g.,* Pl.Ex. 11). For example, there is no evidence in the record of other cases in which investigative reports were inconsistent with field notes in a manner that was prejudicial to a criminal defendant.[3] There is thus no evidence that the Township had received the notice of possibly inadequate training that would permit a jury finding of deliberate indifference in this case.

In addition, plaintiff has proffered no evidence or arguments tending to show that defendants' police-training procedures were so deficient and the resulting risk of infringement of constitutional rights so obvious that plaintiff could be charged with constructive awareness of the training procedures' inadequacy. Indeed, plaintiff's own expert states in his report that he knows of no police standard requiring the greater attention to field notes called for by plaintiff. (Pl.Ex. P).

█ Thus, instead of demonstrating that the Township and Chief Bello were deliberately indifferent to deficient training procedures, the record viewed in the light most favorable to plaintiff indicates only that additional attention to defendant Pickul's field notes might have avoided the injury suffered by plaintiff in this case. A § 1983 plaintiff may not prevail merely by proving "that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *City of*

*Canton,* 489 U.S. at 391, 109 S.Ct. at 1206. In other words, a plaintiff cannot prevail merely by alleging that a municipality or a supervisor could have done more. *See Sample,* 885 F.2d at 1117. For these reasons, plaintiff's inadequate training arguments are not sufficient to warrant presentation of these claims to a jury.

In addition to his arguments concerning inadequate training, plaintiff also contends more generally that the Township and Chief Bello had a "de facto custom of not verifying the statements set forth in the investigation reports against field notes or any other internally generated materials." (Pl. Br. at 13).[4] The court finds this argument to be essentially a restatement of plaintiff's arguments concerning inadequate training. Despite the semantic differences between the two pertinent sections of plaintiff's brief, at the heart of both arguments is plaintiff's straight-forward claim that Mr. Robinson's injury might have been avoided if the Township and defendant Bello had provided additional training to supervisory and subordinate police officers concerning increased use of field notes. This contention as a basis for § 1983 liability is rejected primarily for the reasons discussed above.

The court also emphasizes that a plaintiff can almost always allege, as plaintiff has in this case, that additional training might have avoided the injury claimed. *See City of Canton,* 489 U.S. at 391, 109 S.Ct. at 1206. If this court is to avoid promoting a legal regime of "de facto respondeat superior liability on municipalities," *Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037, plaintiff must prove more in order to prevail on this summary judgment motion with respect to plaintiff's § 1983 claims. This record, however, is devoid of evidence of personal fault or deliberate indifference on the part of the Township or Chief Bello.[5]

---

3. Plaintiff states: "Effectively, [the Township and Chief Bello] virtually ensured that there would be a series of violations of the constitutional rights of criminal suspects such as Donald K. Robinson." (Pl. Br. at 17). Yet, plaintiff is unable to point even to one such instance other than the present case.

4. Plaintiff devotes only 1.5 pages of briefing to this contention.

5. In addition, the court notes that plaintiff has not set forth evidence that proves the causation element of plaintiff's cause of action. The Supreme Court has emphasized the demanding causation requirements in § 1983 municipal liability cases. For example, in *City of Canton,* the

■ Perhaps in an effort to find such evidence of deliberate indifference in the record, plaintiff points out that defendant Pickul has not been disciplined for his alleged misconduct in this case. Plaintiff apparently believes that this warrants an inference of nefarious conduct on the part of the Township and Chief Bello. The court disagrees. There are a variety of possible reasons why a police department would refrain from sanctioning defendant Pickul during the pendency of this case. Negligence on the part of the department is one possible reason, as is the possibility that the department is waiting to see how the present case is resolved before taking any action against defendant Pickul. The mere fact that defendant Pickul has not been reprimanded by his employers does not warrant an inference that those employers have been deliberately indifferent to constitutional violations that have resulted from municipal policies.

In sum, there is an insufficient evidentiary foundation for plaintiff's § 1983 claims against the Township and Chief Bello. As a result, there exists no genuine issue of material fact as to those claims. The court will therefore grant summary judgment to the Township and Chief Bello on plaintiff's § 1983 claims.

### 2. Plaintiff's Malicious Prosecution Claims Against the Township and Chief Bello

Plaintiff's complaint also charges the Township and Chief Bello with maliciously prosecuting plaintiff. These claims are apparently based on the fact that these defendants are "police supervisory personnel" who are responsible for the propriety of the prosecution of Mr. Robinson.

■ The parties agree that this malicious prosecution claim is brought as a tort claim under the common law of New Jersey.

(Pl. Br. at 19–21; Df. Br. at 7–9). Under New Jersey law, the tort of malicious prosecution contains four distinct elements:

(1) a criminal proceeding must have been instituted or continued by the defendant against the plaintiff; (2) terminated in favor of the accused; (3) with absence of probable cause for the charge; and (4) with malice (which may be inferred from lack of probable cause) or primary purpose other than bringing the offender to justice.

*Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 322 (D.N.J.1978); *see Lind v. Schmid*, 67 N.J. 255, 263, 337 A.2d 365 (1975). Failing to establish even one element of the malicious prosecution tort will cause the plaintiff's claim to fail. *Horn v. Village Supermarkets, Inc.*, 260 N.J.Super. 165, 172, 615 A.2d 663 (App.Div.1992).

In moving for summary judgment on this claim, the Township and Chief Bello claim that plaintiff has failed to demonstrate an absence of probable cause for plaintiff's arrest and prosecution in connection with the WaWa robbery. The defendants assert that because there is no genuine issue of material fact as to the probable cause element of plaintiff's case, they are entitled to judgment as a matter of law.

Defendants argue that the following evidence demonstrates that these defendants had probable cause to believe that Mr. Robinson committed the WaWa robbery:

1) The robbery was committed by a black, adult male with a moustache; plaintiff is a black, adult male with a moustache;

2) Through photo identification procedures, plaintiff was identified by multiple eyewitnesses as the perpetrator of the crime;

3) Plaintiff matched the description given by the confidential informant; and

---

Court held that the "identified deficiency in a city's training program must be *closely related* to the ultimate injury." 489 U.S. at 391, 109 S.Ct. at 1206 (emphasis added). The question to be asked by the factfinder is "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* It has not been established that Mr. Robinson would have avoided injury in this case had the Township adopted

the proposed policies concerning the use of field notes. If defendant Pickul was determined to "frame" plaintiff, as is alleged here, then he might have simply avoided taking any field notes from the eyewitnesses or he may have falsified his notes. This further indicates that while defendant Pickul may be found to be liable in this case, the Township and Chief Bello are not the parties responsible for any injury suffered by plaintiff.

4) Plaintiff was indicted by a grand jury. (Df. Br. at 10).

As an initial matter, the court notes that a grand jury indictment may be considered as evidence of probable cause, but it does not prelude a finding that probable cause was missing. *Zalewski v. Gallagher*, 150 N.J.Super. 360, 375 A.2d 1195 (App.Div. 1977). The relevant question is whether the facts are such as to lead a person of ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made. *Lind*, 67 N.J. at 263, 337 A.2d 365.

Although the question is a close one, the court concludes that a reasonable jury could indeed find that criminal proceedings were instituted against plaintiff absent probable cause to believe that he was the perpetrator of the WaWa robbery. Most significant to the court's conclusion is the fact that plaintiff was arrested and prosecuted after eyewitnesses had informed the police that the WaWa assailant was between 6'2" and 5'10" tall. Plaintiff is only 5'4" tall. (Pl.Ex. 15). In addition, plaintiff weighs considerably less than any of the eyewitnesses estimated. If the plaintiff had been only a few inches shorter than the WaWa assailant as described to the police, the evidence in the record tending to show probable cause might have entitled defendants to judgment as a matter of law. However, the difference between the height of plaintiff and the reported height of the assailant is so great that the police should have recognized immediately upon arresting plaintiff that it was unlikely that he was the assailant for whom they were searching. A reasonable jury could conclude that although eyewitness descriptions are not always accurate, the police should have known that the eyewitnesses simply could not have described a 5'4" man as being six foot tall. The jury could further find that the police should have recognized that the eyewitnesses would have taken special note and would have remembered if an assailant were a mere 5'4" tall.[6]

In addition, the police had determined that the fingerprint on the lighter seized from the WaWa did not match the fingerprint of Mr. Robinson. The court recognizes that such a finding did not constitute definitive evidence of Mr. Robinson's innocence. The police could have reasonably concluded that Mr. Robinson's fingerprint had simply smeared off the lighter, or that he never touched it at all. There is also some indication in the record that the police may not have seized the same lighter that the WaWa assailant actually grabbed. On the other hand, the fingerprint evidence from the lighter was somewhat exculpatory: the police seized a lighter believed to have grabbed by the WaWa assailant; the lighter contained a fingerprint; that fingerprint did not match the fingerprint of Mr. Robinson. A reasonable jury could conclude that this evidence further indicates that the defendants did not have probable cause to prosecute plaintiff for the WaWa robbery.[7]

The court therefore disagrees with defendants' contention that no reasonable jury could find for plaintiff on the issue of probable cause. As a result, the court will deny the motion by the Township and Chief Bello for summary judgment as to plaintiff's claim of malicious prosecution.

## C. *Summary Judgment Motion Brought by Defendant Ortiz*

Plaintiff's complaint contains two causes of action against Sergeant Ortiz. First, plaintiff brings claims against defendant Ortiz under § 1983, asserting that Ortiz suppressed evidence that would have exculpated plaintiff in the criminal proceeding against

6. In terms of the photographic identifications in this case, a jury could find that the probative value of those identifications is decreased by the fact that the photos did not reveal the height of the persons pictured. Thus, a jury could be influenced by the fact that while the eyewitnesses may have concluded that plaintiff and the WaWa assailant had similar faces, the witnesses could not see from the photos shown to them that plaintiff was only 5'4" tall.

7. In addition, plaintiffs will apparently contend at trial that the statement from the confidential informant was fabricated by defendant Pickul. Plaintiff claims, for example, that defendant Pickul has provided varying explanations concerning his contact with the informant. (Pl. Br. at 5). This line of argument could affect a jury's view of whether probable cause existed in this case.

him. Specifically, plaintiff points to the manner in which defendant Ortiz handled the evidence indicating that the fingerprint on the lighter seized from the WaWa did not match plaintiff's fingerprint. Plaintiff also alleges that Ortiz maliciously prosecuted him. The court will first address plaintiff's unlawful suppression claim brought pursuant to § 1983.

### 1. *Plaintiff's Section 1983 Claim Against Defendant Ortiz*

Plaintiff charges defendant Ortiz with deliberately suppressing Sergeant Blaker's report containing the results of his fingerprint analysis. Plaintiff explains that the police had reason to believe that the WaWa assailant, during the course of the robbery, grabbed a certain blue cigarette lighter that was on display. The police seized that lighter to conduct fingerprint testing. Defendant Ortiz was the officer who delivered the lighter to the crime lab. Upon examining the lighter, Sergeant Blaker concluded that the fingerprint on the lighter was not that of Mr. Robinson. (Pl.Ex. 13). Sergeant Blaker memorialized this conclusion in a report, but that report mysteriously never made it into Mr. Robinson's file. (Pl.Ex. Q). As a result, Mr. Robinson's attorney in the criminal proceeding never received the report. Blaker testified at his deposition that he normally would have sent such a report to defendant Ortiz, because Ortiz was the officer requesting the fingerprint analysis. (Pl.Ex. N).

The constitutional duty to disclose exculpatory evidence to a defendant stems from the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In that case, the Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196.

Although the *Brady* decision itself focused on the obligations of prosecutors, subsequent decisions have indicated that the duty to disclose exculpatory evidence is shared by other governmental actors as well, such as police officers. *See, e.g., Martinez v. Wain-*

*wright*, 621 F.2d 184, 186–87 (5th Cir.1980); *Hauptmann v. Wilentz*, 570 F.Supp. 351, 389 (D.N.J.1983), *aff'd*, 770 F.2d 1070 (3d Cir. 1985). As one judge in this district has written, "A constitutional violation may occur when there is no *Brady* disclosure because the police have concealed exculpatory evidence from the state prosecutor. The police therefore are under a duty to disclose exculpatory information to the prosecutor." *Hauptmann v. Wilentz*, 570 F.Supp. 351, 389 (D.N.J.1983) (citing *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir.1964)), *aff'd*, 770 F.2d 1070 (3d Cir.1985). Plaintiff has brought this § 1983 suit against defendant Ortiz for failing to comply with that duty.

In decisions since *Brady*, the Supreme Court has explained the degree to which evidence must be exculpatory in order for the evidence to fall within the parameters of the government's *Brady* obligation. Specifically, the Court has held that evidence is "material" for purposes of *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (plurality opinion of Blackmun, J.); *see Kyles v. Whitley*, 514 U.S. 419, 432–34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995).

In this case, the court finds that no reasonable jury could find the lighter evidence to be "exculpatory" for purposes of the *Brady* test. As discussed previously, the Blaker report did not definitively reveal that Mr. Robinson was not the WaWa assailant. It is true, as plaintiff contends, that the fingerprint lifted from the blue lighter seized by Detective Pickul was not the fingerprint of Mr. Robinson. However, the police were not sure that the lighter that they seized from the WaWa was the same lighter that the WaWa assailant had touched. Although an eyewitness had informed defendant Pickul that the assailant had touched one of the plastic blue lighters on display in the WaWa, the witness was not sure which one. (Pl.Ex. A). The witness's indecision in this regard was caused, in part, by the fact that the lighters had been knocked off the counter during the robbery. (*Id.*). Thus, as de-

scribed by defendant Pickul, the choice of which lighter to seize for fingerprinting purposes was based essentially on a "hunch." (*Id.*).

As a result, one could conclude that Mr. Robinson's fingerprint did not appear on the lighter because the police had not seized the same lighter that the WaWa assailant had touched. The lighter seized by the police could have been grabbed by any WaWa patron, and thus the probative value of Sergeant Blaker's fingerprint results was not strong. Moreover, as noted previously, even if the police had seized the same lighter grabbed by the WaWa assailant, the true assailant's fingerprints could have simply smeared off the lighter. In short, a reasonable jury could not conclude that the Blaker report was "exculpatory" as defined by *Brady* and its progeny. *See, e.g., Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir.1994) (holding that witness's prior statement was not exculpatory for *Brady* purposes, because statement was not necessarily inconsistent with arguments set forth by government at trial); *United States v. Boshell*, 952 F.2d 1101, 1106 (9th Cir.1991) (holding that personal diary did not constitute *Brady* material, because "mere possibility that undisclosed information might have helped" the defendant is insufficient under *Brady* test).

In addition, plaintiff has not established that he suffered cognizable harm as a result of the alleged suppression of the Blaker report. This was not a case in which the government was falsely claiming that Mr. Robinson's fingerprint appeared on the seized lighter. Defendant Ortiz's own report concerning the fingerprint testing, while it may have been partially misleading, contained the essential concession that the "print on the lighter was not able to be matched with the suspect's prints." (Pl.Ex. O). Also, it is uncontested that the prosecutor informed Robinson's attorney during the pendency of the criminal action against Robinson that fingerprints had been lifted from a lighter seized from the crime scene, and that the prints on the lighter were found not to be those of Mr. Robinson. (Pl.Ex. J). Thus, Robinson was properly told of the information contained in the Blaker report, and he

has not explained how he was nonetheless prejudiced as a result of not receiving the report itself. Lastly, Mr. Robinson was acquitted of the crimes with which he was charged. In short, Mr. Robinson has not explained how the absence of the Blaker report from his criminal action prejudiced him in that case.

In conclusion, even if the court were to assume that defendant Ortiz suppressed the Blaker report and that the suppression was wilful as opposed to negligent, plaintiff has not explained how he was damaged by the suppression, since he was not convicted of the charge. Plaintiff also has not demonstrated that the report was sufficiently exculpatory to create a "reasonable probability" that disclosure of the report could have altered the outcome of Mr. Robinson's criminal proceeding. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985) (plurality opinion of Blackmun, J.); *see Kyles v. Whitley*, 514 U.S. 419, 432–34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). Finally, there is no dispute that the prosecution conceded that they did not have plaintiff's fingerprint, and that there was substantial uncertainty that this particular lighter was ever touched by the perpetrator. Because a reasonable juror could not find that defendant Ortiz violated plaintiff's *Brady* rights, the court will grant defendant Ortiz's motion for summary judgment on plaintiff's § 1983 claims.

### 2. *Plaintiff's Malicious Prosecution Claims Against Defendant Ortiz*

Plaintiff also brings a malicious prosecution cause of action against defendant Ortiz. Sergeant Ortiz has moved for summary judgment as to this claim on the grounds, *inter alia*, that Ortiz did not participate in the prosecution of plaintiff. Although he offers arguments as to the malicious prosecution elements of probable cause and malice, plaintiff does not address defendant Ortiz's lack-of-participation contentions. In any event, as explained below, the court agrees with defendant Ortiz's argument, and will grant summary judgment on this ground.

A person is considered to have participated in a criminal action against an-

other for purposes of a malicious prosecution charge if he has taken some "affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution or in affirmatively encouraging its continuance after it has been instituted." *Seidel v. Greenberg,* 108 N.J.Super. 248, 257, 260 A.2d 863 (Law Div.1969); *see Devlin v. Greiner,* 147 N.J.Super. 446, 471, 371 A.2d 380 (Law Div.1977) (stating that to be held liable for malicious prosecution, defendant must " 'take some active part in instigating or encouraging the prosecution' ") (quoting Prosser, *Law of Torts* § 119, at 836–37 (4th ed.1971)). "Mere passive knowledge of, or acquiescence or consent in, the acts of another who causes a prosecution is not sufficient to make one liable" for malicious prosecution. *Seidel,* 108 N.J.Super. at 257, 260 A.2d 863.

██ The uncontroverted evidence in this record reveals that defendant Ortiz was not responsible for instituting the prosecution of plaintiff. Ortiz was not actively involved in investigating the WaWa robbery, and he had not been assigned to that case. Nor did Ortiz participate in the arrest of Mr. Robinson or participate in the decision to file a criminal complaint against Robinson. As far as the record indicates, Ortiz merely volunteered to deliver the lighter to the crime lab because defendant Pickul became busy with other matters. The record may permit a conclusion that Ortiz subsequently interfered with the proper recording of the fingerprint results and with the delivery of the Blaker report to the appropriate file. Even if the jury reached such a conclusion, however, there is no evidence that Ortiz initiated the criminal prosecution or affirmatively advised or encouraged prosecutors or other police officers to bring a criminal action against Mr. Robinson. As a result, defendant Ortiz may not be found to have maliciously prosecuted plaintiff in this case. *See Seidel,* 108 N.J.Super. at 257, 260 A.2d 863.

The court will therefore grant summary judgment to defendant Ortiz as to plaintiff's claims of malicious prosecution.

### III. *Conclusion*

The court will grant summary judgment to the Township and Chief Bello as to plaintiff's

§ 1983 claims against those defendants. Summary judgment will not be granted, however, on plaintiff's malicious prosecution claims against those two parties.

With regard to the motions filed by defendant Ortiz, the court will grant summary judgment to defendant Ortiz on both plaintiff's malicious prosecution claim and plaintiff's § 1983 claim, which is based on Ortiz's alleged suppression of exculpatory evidence.

The accompanying Order is entered.

### *ORDER*

This matter having come before the court upon the summary judgment motions brought by defendant Winslow Township, defendant Chief of Police Anthony Bello, and defendant Sergeant Anthony Ortiz, pursuant to Fed.R.Civ.P. 56; and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

IT IS this 24th day of June 1997 hereby

ORDERED that the summary judgment motion filed jointly by Winslow Township and Chief of Police Anthony Bello is hereby *GRANTED IN PART AND DENIED IN PART,* as follows: defendants' motion for summary judgment is hereby *DENIED* as to plaintiff's claims of malicious prosecution; defendants' motion for summary judgment is hereby *GRANTED* as to plaintiff's claims brought pursuant to 42 U.S.C. § 1983; and it is

FURTHER ORDERED that defendant Anthony Ortiz's motion for summary judgment is hereby *GRANTED.*