MARIE S. VLADAR, RESPONDENT, v. LILLIAN KLOPMAN, APPELLANT.

Submitted March 27, 1916—Decided November 20, 1916.

1. The fundamental grounds upon which an action for malicious prosecution rests are that it was instituted against the plaintiff without reasonable or probable cause; and that the defendant was actuated by a malicious motive in making the charge. Unless the evidence in the case establishes the existence of both of these grounds, the plaintiff's suit must fail.
2. Where, in a suit for damages for malicious prosecution, the question whether or not the defendant had probable cause for instituting the prosecution against the plaintiff depends, in part at least, upon facts the existence of which are in dispute, it is the function of the jury to settle those facts, and, upon doing so, to determine on the whole case whether or not probable cause has been shown, such determination being based upon proper instructions from the trial court. But where the facts are not controverted, the question of probable cause is one of law, to be determined by the court, and its submission to the jury is improper.

On appeal from the Hudson Circuit Court.

For the appellant, *Weller & Lichtenstein.*

For the respondent, *J. Emil Walscheid.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant, on July 10th, 1914, made a complaint before a justice of the peace, charging the plaintiff with stealing a gold and coral necklace, a gold and coral bracelet and a silver mesh bag. A hearing on the charge was had before the magistrate, and resulted in the plaintiff's discharge from custody. The plaintiff thereupon instituted an action for malicious prosecution against the defendant, adding thereto a count for slander. The trial of the action resulted in a verdict in the plaintiff's favor. From the judgment entered on that verdict the defendant now appeals.

So far as the plaintiff's claim for damages is based upon the charge of slander, it may be disposed of by saying that no attempt was made at the trial to prove the speaking by the defendant of the slanderous words set out in the complaint, or of any other words of similar purport. This being so, the judgment, if valid, must rest solely upon the charge of malicious prosecution.

The fundamental grounds upon which an action for malicious prosecution rests are that it was instituted against the plaintiff without reasonable or probable cause; and that the defendant was actuated by a malicious motive in making the charge. Unless the evidence in the case establishes the existence of both of these grounds, the plaintiff's suit must fail.

The principal ground of appeal in the present case is that the uncontroverted proofs demonstrate that the defendant had reasonable and probable cause for charging the alleged larceny against the defendant, and that, therefore, the trial court should have directed a verdict in the defendant's favor when, at the close of the testimony, a motion for such direction was made.

There was proof submitted by the plaintiff which showed that the charge of larceny made against her was false. When she rested her case, therefore, this proof was sufficient to justify an inference of want of probable cause, and of malice. *Navarino* v. *Dudrap*, 66 *N. J. L.* 620; *Weisner* v. *Hanson*, 81 *Id.* 601.

To rebut the inference thus raised the defendant proved the following facts: On the morning of the 1st of July some chemicals which her son Willie, a boy about twelve years old, was compounding for the purpose of use in celebrating the Fourth of July, exploded with such force as to break the windows in, and dislodge the plaster from several of the rooms in the house. In order to have the debris cleared away as rapidly as possible, she directed her servant, Emma Gross, to try and get some woman to come there the next day and do this work. Emma thereupon went to the house of the plaintiff, with whom she had become acquainted

because of the fact that her (Emma's) sister Lena was boarding there, and secured her services. The plaintiff was engaged in the work of cleaning the house for two days, and on the second day, about noon, a cousin of the defendant, a Mrs. Gerson, happened to go upstairs to the defendant's bedroom, and there observed the plaintiff standing in front of a bureau drawer which was open. She seemed greatly excited at Mrs. Gerson's appearance, and said to her, "Go out, lady, you must not come in here, you can't do any work here." Mrs. Gerson thereupon went downstairs and told the defendant what she had observed and advised her to lock up her belongings. The defendant had left in this room during the morning the three articles which she charged the plaintiff with having stolen. About two o'clock in the afternoon she went to the room for the purpose of getting the front door key out of the silver mesh bag, and found the bag missing. She then looked for the bracelet and the necklace, and they, too, had disappeared. The only persons who had been in the house during the day were the defendant, her cousin, Mrs. Gerson, the plaintiff, and the servant, Emma Gross. The latter had been in the defendant's employ for a year and a half, and never had done anything to cause her honesty to be questioned. The defendant suspected the plaintiff of having taken these articles, but, as she had no satisfactory proof against her, merely told her that she would not require her services any longer. About a week after the articles had been discovered to be missing, Emma Gross brought her sister Lena to the defendant's house, and Lena then informed her that Mrs. Vladar, the plaintiff, a few days before, had told her that a lady had given her a bracelet and a necklace; that the bracelet had red stones in it, and the necklace had a red stone in it, and that some day she would show these articles to her. The missing bracelet was composed of gold and coral; the necklace had a coral pendant. The day after this information was received Mrs. Klopman, the defendant, went to the justice of the peace and made the complaint which is the basis of the present action.

None of this testimony was attempted to be controverted, nor was the credibility of the witnesses who gave it sought to be impugned. The question, therefore, to be determined upon the motion to direct a verdict was whether these facts exhibited probable cause for believing the plaintiff to have been guilty of the theft of these articles. The trial court refused the motion upon the ground that the existence or non-existence of probable cause was a matter to be determined by the jury rather than by the court. In this holding we think there was error.

Where the question whether or not the defendant had probable cause for instituting the prosecution against the plaintiff depends, in part, at least, upon facts the existence of which are in dispute; it is the function of the jury to settle those facts, and, upon doing so, to determine on the whole case whether or not probable cause has been shown, such determination being based upon proper instructions submitted by the trial court. *Weisner* v. *Hanson, supra; Sunderbrand* v. *Shills,* 82 *N. J. L.* 700. But where the facts are not controverted the question of probable cause is one of law to be determined by the court, and its submission to the jury is improper. *Magowan* v. *Rickey,* 64 *Id.* 402; *McFadden* v. *Lane,* 71 *Id.* 624; *Hartdorn* v. *Webb Manufacturing Co., ante p.* 262; *Lane* v. *Penna. R. R. Co.,* 78 *N. J. L.* 672; *Sunderbrand* v. *Shills, supra.*

As we have already stated, the facts which were the inducing cause of the defendant's complaint against the plaintiff were uncontroverted; they, therefore, presented a question of law for the determination of the trial court, viz., whether they exhibited probable cause for the defendant's action. We are clear that they did. The fact that the stolen articles were in the defendant's room on the morning of the second day of plaintiff's employment there, and had all disappeared before two o'clock in the afternoon; the fact that there were only four persons in the house during that time, including the defendant herself; that one of them was her cousin, Mrs. Gerson, and that another was her servant who had been in her employ for a year and a half, and whose

honesty apparently was not 'open to suspicion, coupled with the fact that the plaintiff was an entire stranger to her, and had admitted to Lena Gross that she had in her possession articles of jewelry similar in description to those which had disappeared from her house, would, we think, have led any reasonable person to the belief that the latter was responsible for the disappearance of the stolen articles. This being so, it was the duty of the trial court to have directed a verdict in favor of the defendant.

It has been suggested that the rule first adverted to in this opinion, namely, that proof of the falsity of the charge justifies an inference of malice and of absence of probable cause for making the complaint, and that which permits a court, as a matter of law, to determine upon the undisputed facts in a case that probable cause exists, are out of harmony with each other, and that, therefore, one or the other must be unsound. We think not. The first rule merely creates a presumption which the defendant must overthrow in order to defeat the plaintiff's action. The second rule permits the absolute destruction of the presumption by uncontroverted proof of facts which demonstrate that the defendant had probable cause for making the charge laid against the plaintiff. It is true that, ordinarily, where a fact is proved which raises a presumption of liability on the part of the defendant, and other facts are put in evidence which tend to overthrow that presumption, a question is presented for the determination of the jury rather than of the court. But actions for malicious prosecution have always been differentiated by the courts, so far as this special feature of litigation is concerned. The rule which makes the existence or non-existence of probable cause, when the facts are not in dispute, a matter to be determined by the court, is probably the outgrowth of a public policy, the purpose of which was to encourage criminal prosecutions at the instance of private citizens, by making them certain that they might safely intervene to put in motion the machinery of the criminal law against apparent violators of its provisions, without being liable to be mulcted in damages, in case the prosecution should fail through lack

of sufficient evidence or, perhaps, through the vagaries of the trial juries of earlier days. But, whatever may be its foundation, and whether it be logical or not, it has been too long in existence, and too universally followed, to be now subject to question.

For the reasons we have given, we conclude that the judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 15.