JOHN R. SCHLENK, COMPLAINANT-RESPONDENT, v. LEHIGH VALLEY RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued November 22, 1948—Decided December 6, 1948.

*Mr. Charles W. Broadhurst* argued the cause for defendant-appellant (*Messrs. Markley & Broadhurst,* attorneys).

*Mr. Archie Elkins* argued the cause for complainant-respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.   In the course of his employment as a yard foreman in the Newark railroad yard of the defendant on July 10, 1947, complainant became angry at the lack of information as to the placing of a car in making up a train.   Without provocation he called the clerk, who he thought should be able to give him the information, an ugly appellation, which at least since the days of "The Virginian" has been thought to constitute fighting words, unless said with a smile, which was entirely lacking here.   On the contrary, according to a fellow trainman and the fireman on the engine, the complainant grabbed the clerk, pinned his arms to his sides, threw him on the ground and rubbed his face in the cinders, with the result, according to the yardmaster, that the right side of his face was all covered with cinders and dirt. The two fellow employees further testified that after the clerk got up from the ground the complainant called after him that, "If you don't keep your mouth shut, I will kill you," or words to that effect.

As a result the complainant was ordered to appear before the trainmaster the following morning for a hearing at which he was found guilty of violating *Rule* 801 of the defendant's rules and regulations, which, among other things, prohibited "altercations with patrons or other employees while on duty or while on company property."   He was thereupon discharged.   This was not the complainant's first offense, for in the twelve and a half years of his employment by the defendant out of his nearly 38 years of experience he had twice before been discharged, once for the use of intoxicants and once for violation of company rules as to the proper methods of performing work to avoid accidents.   He had also been suspended before for another altercation with a fellow employee.

Complainant filed a bill in Chancery to restore him to his former position on the ground that he had not been accorded

a fair trial as required by the working agreement between the Brotherhood of Railroad Trainmen and the defendant. The learned Vice Chancellor found that the defendant had acted with undue haste and on January 6, 1948, ordered the complainant reinstated. No appeal was taken from this decree.

On the instruction of the defendant the complainant presented himself for a medical examination on January 14th and was found physically fit by the defendant's physician. On January 15th he reported to the trainmaster's office and when asked if he desired to return to work that day, stated that he had a "few things to take care of" and as soon as he had them "straightened out I would report to work." Following his departure that day, the trainmaster sent him a letter by registered mail requesting him to appear at the trainmaster's office on January 23rd for an investigation with respect to the altercation of July 10th. The complainant returned to work on January 19th and on January 21st he applied to the Court of Chancery for temporary restraint against the hearing scheduled for January 23rd and obtained the relief sought. On February 17th he filed a supplemental bill of complaint, alleging prejudice against him and his consequent inability to obtain a fair trial from the defendant and seeking a determination in the Court of Chancery of the merits of the charge against him and of the discipline to be imposed, together with a permanent restraint against a trial of the charge by the defendant. The defendant denied not only the allegations of the supplemental bill but also the jurisdiction of the court to try the complainant and to determine what discipline should be imposed on the complainant.

At the final hearing the complainant adduced testimony seeking to show that during the period from his reemployment in January the general manager of the defendant and the trainmaster were no longer friendly and sociable to complainant, that the trainmaster refused to have direct relations with him, and also that the yardmaster to whom the altercation had been first reported had refused to call off the

first hearing in July, 1947, although the assaulted clerk had requested him to do so at that time.

The learned Vice Chancellor found that there was substance to the contention that the complainant could not receive a fair and impartial hearing from the defendant. On the merits of the charge he determined that the complainant was guilty of violating *Rule* 801, but that punishment by dismissal was unduly severe and that the loss by the complainant of his wages from July, 1947, to the date of his reinstatement in January, 1948, was "ample punishment." A final decree was entered on July 23, 1948, incorporating these conclusions and containing a permanent restraint against a retrial of the charge by the defendant. From this decree the defendant appeals.

Equity has no inherent jurisdiction over the relation of employer and employee. Each is free, in the absence of contract or statute, to discontinue the relation at will, with or without cause. Where a contract exists, however, equity has the power, as it did here, to protect the complainant from the consequences of a hasty trial without being represented, in violation of the contractual provisions for "a fair hearing and investigation" and appropriate representation thereat. In such circumstances damages in a suit at law would be an inadequate remedy for the complainant's loss of position, pension and retirement rights. The decree of January 6, 1948, which was not appealed from, is unquestionably sound. It is quite a different matter, however, for equity to adjudge in advance of a hearing of a complaint by the defendant that the complainant, though found guilty in equity, could not receive a fair and impartial trial from the defendant and to determine in equity the extent of the discipline to be imposed on the complainant for violation of the defendant's rules and regulations.

We have reviewed the testimony as to the alleged prejudice of the defendant against the complainant. It is charged by the complainant that Mr. Brandenburg, the trainmaster, declined to drop the charge against the complainant, although requested by the injured clerk so to do. The com-

plainant made much of the fact that Mr. Swift, the defendant's superintendent, declined to deal directly with him, ignored him and no longer called him by his first name, all of which is explainable in view of the pending hearing under the defendant's rules. Complainant testified also that Mr. Patterson, the general manager of the defendant company, no longer called the complainant by his first name or even by his last name, but that on one occasion Mr. Patterson drew down the shades of his car when he saw the complainant looking in at him and that on another occasion Mr. Patterson declined to recognize the complainant when he looked at the general manager through the windows of a dining car. On the basis of these incidents the complainant concluded "Mr. Patterson took a very unfriendly attitude toward me * * * The man wouldn't recognize me." Mr. Patterson's conduct may readily be attributed to other motives than those ascribed to him by the complainant, but in any event the testimony appears to us to be too slight to permit us to predicate on it a finding that the defendant would not give the complainant a fair hearing, especially in view of the provisions of the Brotherhood agreement which provided that "Any trainman who is dissatisfied with the decision of any officer of his company shall have right of appeal to his superintendent, or, having appealed to the superintendent, to a higher appeal."

But even had there been persuasive proof of prejudice, equity would still have had no jurisdiction to interfere in advance of the hearing and the appeals provided for in the contract and to substitute its own judgment on the charge and discipline therefor in place of the contract and the common-law rights and obligations of the parties. To do so would be not only to rewrite the contract of the parties but to intrude into the relation of employer and employee, which equity in the absence of contract provisions or a statute has never done. Any mischief which may arise from a prejudiced hearing or ensuing appeals under the terms of the Brotherhood agreement may be amply remedied after the hearing and appeals, as the earlier decree in this case has demonstrated.

■ Nor has equity power to determine, either before or after the hearing and appeals provided for in this contract, the extent of the discipline the employer may impose as a condition of the employee remaining in his service or to curb the employer's right to dismiss his employee. The learned Vice Chancellor found that the complainant had suffered a loss of wages running over months, but the record is devoid of any such proof, nor is there any claim made for such loss of wages in either the original or supplemental bill of complaint. He concluded that the alleged loss of wages would be ample punishment. Even if the complainant had not been employed elsewhere during the litigation (his employment record showed he had been out of the defendant's services 25½ years out of his 38 years of experience since 1909) the matter of discipline or of discharge is, except insofar as otherwise agreed by contract, as exclusively for the determination of the employer as is the question of whether the employee wishes to continue to work is for him. Not only has equity never attempted to administer discipline in such cases; it is not equipped to do so. How is equity to be sure it is doing justice between the parties by, in effect, directing the defendant to continue the service of the complainant who admits that he got "hot-headed" without justification, called a fellow employee a vile name, and then said "in a fit of temper" he would kill him? On questions of discipline and of discharge the parties must be left to their common-law and contractual rights and liabilities.

We have examined the cases relied on in the opinion below and cited by the complainant on the appeal; none of them falls within the ambit of the questions of law raised by the facts of the present appeal. Holding the view we do as to the lack of inherent jurisdiction of equity, we do not deem it necessary to pass on the question raised as to the necessity of the complainant exhausting his remedies before the National Railroad Adjustment Board.

The final decree of July 23, 1948 will be reversed.

*For reversal:* Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*For affirmance:* None.