862 A.2d 1156

JOSEFINA EPPERSON, PLAINTIFF–APPELLANT, v. WAL–MART STORES, INC., DEFENDANT–RESPONDENT, AND FRANKLIN TOWNSHIP, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 2004—Decided December 20, 2004.

524

Before Judges WEFING, PAYNE and C.S. FISHER.

*Charles Z. Schalk* argued the cause for appellant (*Mauro, Savo, Camerino & Grant,* attorneys; *Mr. Schalk,* of counsel and on the brief).

*Richard D. Millet* argued the cause for respondent (*Richard D. Millet & Associates,* attorneys, *Mr. Millet,* of counsel and on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

Plaintiff Josefina Epperson filed a complaint, asserting various causes of action claimed to have resulted from her termination as an employee of defendant Wal–Mart Stores, Inc. At trial, after plaintiff rested her case, Wal–Mart successfully moved for an involuntary dismissal of plaintiff's malicious prosecution and wrongful termination claims. Because the trial judge mistakenly interpreted the law applicable to malicious prosecution claims, and because we are satisfied the jury could have found from the evidence that plaintiff met all the factors required to sustain such a claim, we reverse and remand for a new trial of the malicious prosecution claim.

On the other hand, we affirm the dismissal of the wrongful termination claim because, in these particular circumstances, that claim is purely derivative of the malicious prosecution claim. If, in these circumstances, we were to conclude that plaintiff possesses an actionable wrongful termination claim, to sustain it she would have to prove all the elements of her malicious prosecution claim; in addition, the damages available in the alleged wrongful termination claim would be no different from those available if plaintiff succeeds on the malicious prosecution claim. Accordingly, to allow both actions to proceed might engender jury confusion without creating for plaintiff a platform for any additional or alternative relief.

I

In granting Wal–Mart's motion for an involuntary dismissal, the trial judge was required to accept as true all the evidence presented in plaintiff's case and provide plaintiff, as well, with all legitimate inferences generated by that evidence. *R.* 4:37–2(b). As the

Court stated in *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969), the judicial function on a motion for involuntary dismissal "is quite a mechanical one [in which] [t]he trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." That same standard applies to our review of the trial judge's ruling. Accordingly, in determining whether the judge properly granted the motion for an involuntary dismissal, we are required to accept the following evidence as true.

In December 1998, plaintiff was in the tenth year of her employment with Wal–Mart, and was then serving as assistant manager at the Wal–Mart in Clinton. At that time, plaintiff was advised by the ex-wife of a department manager that her ex-husband had stolen Wal–Mart property and that another employee, Dan, was selling stolen property, including car stereos, in the Wal–Mart parking lot. At plaintiff's request, the department manager's ex-wife placed this information in writing. Plaintiff thereafter showed this statement to her supervisor as well as another assistant manager. According to plaintiff, even though her supervisor, Richard Tanner, showed little concern about these possible thefts, she thought the allegations were worth further examination. That same month, Officer Oliveira of the Franklin Township Police Department was in the Clinton Wal–Mart investigating another theft allegation, when plaintiff informed him of the allegations made by the department manager's ex-wife.

On February 15, 1999, plaintiff asked Dan, where she could purchase a car stereo; Dan said he could get one for her within a few days. Plaintiff testified that she reported this conversation to both Oliveira and Tanner; Tanner instructed her to proceed with the transaction.

On March 1, 1999, Dan approached plaintiff and asked if she was still interested in buying a car stereo. Plaintiff indicated she was. Two weeks later, Dan informed her that he had a stereo available for $50; plaintiff offered $40 and he accepted. According to plaintiff's testimony, Dan insisted upon installing the stereo

himself, but was unable to complete the installation and, as a result, put the stereo back in its container and placed it in the trunk of plaintiff's car.

Plaintiff immediately returned to the store and told Tanner what occurred. According to plaintiff, Tanner asked her to bring the stereo into the store. She declined, however, because Dan was also in the store and she did not want to arouse his suspicions. Tanner agreed, and the stereo was left in the trunk of plaintiff's car. Plaintiff also unsuccessfully attempted to contact Oliveira; she asked Jim Black, the in-store loss prevention employee, to contact Oliveira, but he, too, was unsuccessful in that regard.

A few days later, plaintiff observed Oliveira and Black speaking in the Clinton Wal–Mart. She approached them, and explained that Dan had sold her a stereo that was still in her car. Together, the three retrieved the stereo, and Black later confirmed, from its serial number, that the stereo came from Wal–Mart's inventory.

Despite her concerns about her own safety, Tanner told plaintiff not to worry and to continue to cooperate with the police. Plaintiff also reported these events to the Wal–Mart loss prevention hotline. At a later date, plaintiff advised Michelle Wilson, another loss prevention employee, that Oliveira wanted her to purchase another car stereo from Dan; Wilson advised her not to do so. Plaintiff also spoke to Chuck McDowell, Wal–Mart's district manager of loss prevention. He requested that she put the information in writing and come to work the next day, even though it was her day off.

As requested, plaintiff reported to work on April 13, 1999 and met with McDowell, who asked her to accompany him and Mark Larson, the store manager, to the police station. She complied. When they arrived, Oliveira asked her to sign a Miranda form. She refused. Another police officer interrogated plaintiff in the presence of both Larson and McDowell, insinuating that she had stolen car stereos from Wal–Mart. Plaintiff denied any wrongdoing. After accusing plaintiff of lying, threatening her with jail, and attempting to wrest from plaintiff an admission of shoplifting,

Oliveira turned to McDowell and said to him, "I'll give you two minutes to talk to [plaintiff]." McDowell then told plaintiff he did not think she was telling the truth and attempted to persuade her to confess. Plaintiff refused. With that, McDowell looked toward Oliveira, who "stood up from his chair, ... asked [plaintiff] to stand up, ... start[ed] reading [plaintiff her] rights, ... arrested [her], and handcuffed [her to] the chair." When plaintiff continued to advocate her innocence, she was released from the chair, but McDowell immediately terminated her employment and requested her key, badge and discount card. Plaintiff was then arrested, fingerprinted and searched.

Plaintiff was charged with shoplifting. She was required to appear twice in Franklin Township Municipal Court. During the first appearance, plaintiff was offered and rejected a plea bargain to a lesser charge. On the second occasion, sometime in March 2000, the complaint was dismissed. Plaintiff claimed that dismissal was ordered because the prosecutor had insufficient evidence to further pursue the matter.

II

On November 15, 2000, plaintiff commenced this action against Wal–Mart and Franklin Township, alleging numerous causes of action. The parties later stipulated to a dismissal with prejudice of the claims against Franklin Township. Other claims, including a cause of action based upon the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, were dismissed prior to trial.

The matter went to trial on October 16, 20 and 21, 2003 on the remaining counts. The trial judge, as observed earlier, granted an involuntary dismissal of the malicious prosecution and wrongful discharge claims after plaintiff rested her case. The jury rendered a verdict in favor of Wal–Mart on the remaining claim of false imprisonment. Plaintiff appeals only the grant of the involuntary dismissal of the malicious prosecution and wrongful discharge claims.

### III

A civil action based upon the malicious prosecution of a criminal complaint may be sustained only with proof "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Myrick v. Resorts Int'l Casino & Hotel,* 319 *N.J.Super.* 556, 563, 726 *A*.2d 262 (App.Div. 1999). Each of these elements must be established or the claim must fail. *Lind v. Schmid,* 67 *N.J.* 255, 262, 337 *A*.2d 365 (1975); *Myrick, supra,* 319 *N.J.Super.* at 563, 726 *A*.2d 262.

In this matter, the arguments of the parties relate to the first, second and third factors. Even though the trial judge determined only that the proofs relating to the first factor were inadequate—a conclusion that we reject—we also comment on the other factors in controversy in order to provide guidance for the re-trial of this claim.

### A

In seeking an involuntary dismissal, Wal–Mart argued that plaintiff failed to provide adequate evidence that there was either an absence of probable cause or that the criminal prosecution was instituted in malice—the third and fourth factors. Notwithstanding that Wal–Mart never argued it did not institute the criminal proceeding against plaintiff, the trial judge focused on this first factor, observing that the complaint was signed by a Franklin Township police officer, and not a Wal–Mart representative. In response to plaintiff's argument that signing the criminal complaint is not alone determinative and that it should be sufficient, to meet the first factor, that defendant have aided, encouraged, or pressured the signer of the complaint to bring the criminal proceeding, the judge discussed these contentions but ultimately concluded "there's no evidence to the contrary, that the prosecution was instituted by Franklin Township through its officer, Oliveira."

■ In ascertaining whether the first factor—institution of a criminal proceeding by defendant against plaintiff—has been met, the mere fact that Wal–Mart did not sign the complaint, as we interpret the trial judge's decision, is not alone determinative. Instead, as observed in a leading treatise, while this factor is not met when defendant merely approves or silently acquiesces in the acts of another, it may be met by proof that defendant took "some active part in instigating or encouraging the prosecution" or "advis[ing] or assist[ing] another person to begin the proceeding, [or by] ratif[ying] it when it is begun in defendant's behalf, or [by] tak[ing] any active part in directing or aiding the conduct of the case." Prosser and Keeton, *The Law of Torts* § 119 at 872 (5th ed., 1984).

We recognize that the absence of appellate direction as to the parameters of the first factor may have contributed to the trial judge's mistaken determination. However, two trial court decisions correctly acknowledged that this factor is more expansive than held by the trial judge here, *see Seidel v. Greenberg,* 108 *N.J.Super.* 248, 257–59, 260 *A.2d* 863 (Law Div.1969); *Robinson v. Winslow Tp.,* 973 *F.Supp.* 461, 474 (D.N.J.1997), and, moreover, there is no support for the proposition, adopted by the trial judge, that liability for malicious prosecution only attaches to the actual signers of the underlying criminal complaint. We reject the trial judge's approach to this factor and conclude that the broader parameters described in Dean Prosser's treatise, as followed in *Seidel* and *Robinson,* staked out the correct boundaries. As a result, we conclude that the trial judge misconceived this factor by concluding that the fact that the police and not Wal–Mart executed the criminal complaint was determinative. We are satisfied that the jury could have inferred from the evidence offered by plaintiff that by bringing plaintiff to the police station, by remaining present while plaintiff was interrogated by the police, and by actually participating in the interrogation, Wal–Mart encouraged, participated in, and perhaps even pressured the Franklin Township police to prosecute plaintiff. In short, there was evidence in the record that the jury could have found credible and drawn

inferences therefrom that Wal–Mart was the "proximate and efficient cause of maliciously putting the law in motion." *Seidel, supra,* 108 *N.J.Super.* at 258, 260 *A.2d* 863.

### B

While the judge's dismissal of the malicious prosecution claim was based solely on his misunderstanding of the first factor, Wal–Mart has also attempted to convince us that plaintiff failed to provide sufficient evidence as to the second factor (that the prosecution was not commenced or pursued with actual malice) and the third factor (that there was an absence of probable cause). A review of the evidence compels our conclusion that plaintiff's proofs were sufficient to warrant the denial of Wal–Mart's motion for involuntary dismissal regardless of whichever factor is focused upon.[1]

■ The proofs regarding the third factor were somewhat sketchy, but plaintiff testified that upon her second and last court appearance on the criminal matter, the action was dismissed for lack of evidence. For purposes of a motion for involuntary dismissal, the trial judge was required to accept this testimony as true. Assuming, then, that the criminal matter was dismissed for insufficient evidence, the jury could infer there was no probable cause for the criminal prosecution.

■ And lastly, we are also satisfied that while there was no direct evidence that Wal–Mart acted with malice in urging and participating in the criminal proceedings, Wal–Mart's actual malice could be inferred from the circumstances presented. The malice that plaintiff must demonstrate "does not necessarily mean that the defendant was inspired by hatred, spite or ill will." Prosser, *supra,* § 119 at 883. It is enough that the defendant

---

[1] The fourth factor requires proof that the criminal action was terminated favorably. In moving for an involuntary dismissal, Wal–Mart did not dispute that the criminal proceeding was voluntarily dismissed by the prosecution or that this event was the equivalent of a termination favorable to plaintiff.

"uses the prosecution for the purpose of obtaining any private advantage." *Ibid.* As may have been suggested by plaintiff's proofs, malice may spring from Wal–Mart's possible attempt to cover up the theft of store property by others by causing the focus to turn on plaintiff. Wal–Mart may also have used the institution of the criminal proceedings as a basis for plaintiff's termination or to obtain leverage in any future wrongful termination action plaintiff might have commenced. Certainly, if plaintiff's version of what occurred is found true—and that is for the jury to determine—malice could be inferred from the circumstances.

■ Wal–Mart's argument that there was an absence of direct evidence of malice is unavailing. While it may be true that plaintiff did not produce a witness to testify that Wal–Mart was attempting to falsely accuse her of theft, that shortcoming is certainly not fatal. Instead, malice may be quite naturally inferred from the circumstances:

> The defendant's improper purpose usually is proved by circumstantial evidence. The plaintiff must establish malice in addition to the absence of probable cause. However, some courts have said that there is no legitimate purpose in the prosecution unless the prosecutor has an honest belief in the guilt of the accused. On this theory, it is held that lack of probable cause may give rise to an inference of malice, since if the accuser had almost no basis for belief in guilt, the jury may infer that he did not in fact believe in the accused's guilt and must have acted for an improper purpose.... [I]n certain cases it is not so much malice that is required as a serious abuse of authority.
>
> [Prosser, *supra*, § 119 at 883–84.]

Our courts have adopted the approach described by Dean Prosser, concluding generally that evidence pertaining to one of the factors may be relevant to proving another. *Lind, supra,* 67 *N.J.* at 262, 337 *A.*2d 365. Indeed, the Supreme Court has specifically concluded that "proof of lack of probable cause may be appropriate evidence from which to infer but not necessarily establish malice." *Ibid.; see also Morales v. Busbee,* 972 *F.Supp.* 254, 261 (D.N.J.1997), *app. dis.,* 156 *F.*3d 1225 (3d Cir.1998); *Voytko v. Ramada Inn,* 445 *F.Supp.* 315, 322 (D.N.J.1978). If believed by the jury, plaintiff's version of what occurred—that (1) plaintiff received information of shoplifting by co-employees, (2)

investigated and participated in a buy from a suspected co-employee in order to test the veracity of the information provided, (3) was then prosecuted for shoplifting, in the absence of probable cause, through the influence of her employer, and (4) the charges brought against plaintiff were terminated in her favor—could adequately give rise to an inference that Wal–Mart acted without a proper purpose.

Based upon our review of the record, we are satisfied that the evidence submitted by plaintiff was sufficient to require a denial of the motion for an involuntary dismissal and, accordingly, reverse and remand for a new trial on this claim.

## C

We deem it appropriate to examine the scope of damages available in this unusual setting in order to provide guidance for the proceedings to follow in the trial court, and also because the scope of available damages relates to the continued viability of the wrongful termination claim discussed in Section IV of this opinion.

We initially observe that it is often said that the law does not favor, and does not encourage, malicious prosecution actions. *Penwag Prop. Co., Inc. v. Landau,* 76 *N.J.* 595, 598, 388 *A.*2d 1265 (1978) (citing *Mayflower Indus. v. Thor Corp.,* 15 *N.J.Super.* 139, 153, 83 *A.*2d 246 (Ch.Div.1951), *aff'd o.b.,* 9 *N.J.* 605, 89 *A.*2d 242 (1952)). This disfavor and discouragement, however, stems from a concern that to permit a broader right of recovery in such circumstances might inhibit people from instituting prosecution of those reasonably suspected of criminal activity. *Penwag, supra,* 76 *N.J.* at 597–98, 388 *A.*2d 1265; *Lind, supra,* 67 *N.J.* at 262, 337 *A.*2d 365; *Vladar v. Klopman,* 89 *N.J.L.* 575, 579–80, 99 *A.* 330 (E. & A.1916). On the other hand, when all the elements of such an action are proven, another public policy attaches: "one who recklessly institutes criminal proceedings without any reasonable basis should be [held] responsible for such irresponsible action." *Lind, supra,* 67 *N.J.* at 262, 337 *A.*2d 365. Accordingly, if a plaintiff establishes the four malicious prosecution factors, there is then no

reason why plaintiff should not be awarded damages "for any specific financial loss such as the loss of present or prospective employment ... which can be proved with reasonable certainty to have been caused by the prosecution, provided that it is regarded as a foreseeable, or normal, consequence of the criminal proceeding." Prosser, *supra*, § 119 at 888.

It is probably fair to say that, in describing the standard for an award of lost wages, Dean Prosser envisioned a different situation than that presented here. The more typical malicious prosecution action involves A's wrongful prosecution of B which results in the termination of B's employment relationship with C. In such a circumstance, and depending upon B's ability to demonstrate a nexus between the malicious prosecution and the employment termination, B may recover damages in the form of the wages he would have earned from C but for A's actions. In this case, however, B and C are the same entity. In examining this precise problem, the members of the Supreme Court of Alabama produced three separate opinions in *In re Kimberly–Clark Corp.*, 449 *So.*2d 794 (Ala.1983).

It was argued in *Kimberly–Clark* that lost wages are not available when an at-will employer discharges the same employee it maliciously prosecuted because the employee has no vested right to future wages, under any circumstances, from an at-will employer. In other words, because Alabama law permits an employer to terminate an at-will employee for a good reason, a wrong reason, or no reason, *see Hinrichs v. Tranquilaire Hosp.*, 352 *So.*2d 1130, 1131 (Ala.1977), the employee has no expectation to future wages whether treated fairly or maliciously when discharged.

Adopting Dean Prosser's view that "the loss of present or prospective employment" is available when such a loss is "a foreseeable, or normal, consequence of the criminal proceeding," Prosser, *supra*, § 119 at 888, a majority of five justices concluded that lost wages may be awarded in a malicious prosecution action brought against the former employer. The majority attempted to

defuse the minority's contention that this holding created an exception to the employment at-will doctrine by suggesting that they would not allow such damages in a wrongful termination action. *Id.* at 795 ("The problem with [the employer's] argument ... is that this is not an action for wrongful termination of employment, but one for malicious prosecution."). The Chief Justice concurred in a separate opinion, stating:

In the present action, Kimberly–Clark Corporation is both the employer and the malicious prosecutor. This factual twist appears to create a conflict between [the scope of damages available in a malicious prosecution action and the right of an employer to discharge an at-will employee for any or no reason]. If plaintiff is permitted to recover against Kimberly–Clark, we would appear to be approving an exception to the rule that an employee at will cannot recover for wrongful termination. By the same token, if plaintiff is not allowed to recover employment damages, then we would be denying him just compensation merely to prevent the appearance of conflict with the employee termination doctrine.

The solution to this dilemma is to consider whether plaintiff, in this case, can prove that his loss of employment was caused by Kimberly–Clark's malicious prosecution.

[*Id.* at 796.]

The three dissenting justices found the majority's holding, as well as the concurring justice's introduction of an element of proximate cause, to be "ludicrous." *Ibid.* These dissenting justices claimed that permitting plaintiff's claim for lost wages, even in the context of a malicious prosecution claim, seriously undermined the right of an employer to terminate an at-will employee "for any reason, even a malicious reason." *Ibid.* In asserting that Alabama's hard-and-fast employment at-will doctrine trumped the notion that a successful malicious prosecution plaintiff should be entitled to all damages reasonably flowing from the malicious prosecutor's actions, the dissenters declared:

[T]he employer had the absolute and unequivocal legal right to *terminate his obligation to pay wages to that employee.* Thereafter, the employer did not owe the employee any wages and, so, no "lost wages" could accrue. And, of course, none could be recovered by an employee who alleged that the employer had maliciously discharged him. There being no "lost wages" to be collected, it follows that none could be made an element of damages in any lawsuit.

[*Ibid.*]

It is evident that the disagreement revealed by the separate opinions in *Kimberly–Clark*, in dealing with the circumstance where the malicious prosecutor and the at-will employer were one and the same, was provoked by the Alabama Court's continued adherence to an inflexible employment at-will doctrine once found in our own jurisprudence. *See, e.g., Schlenk v. Lehigh Valley R.R. Co.*, 1 *N.J.* 131, 135, 62 *A.*2d 380 (1948). This clash of inconsistent philosophies, so vividly demonstrated by *Kimberly–Clark*, is avoided when the problem is transplanted to New Jersey, because our Supreme Court abandoned its similar inflexible employment at-will doctrine over twenty years ago.[2]

While our courts still adhere to the general statement of law that an employee at-will can be "fired for a false cause or no cause at all" even if the firing is "unfair," so long as it is not illegal, *Erickson v. Marsh & McLennan Co., Inc.*, 117 *N.J.* 539, 560, 569 *A.*2d 793 (1990), a number of significant exceptions have been recognized. For example, an employer may not terminate an

---

[2] While New Jersey has been in the vanguard in creating exceptions to the former employment at-will doctrine, *see, Pierce v. Ortho Pharm. Corp.*, 84 *N.J.* 58, 417 *A.*2d 505 (1980) and *Woolley v. Hoffmann–LaRoche, Inc.*, 99 *N.J.* 284, 491 *A.*2d 1257 (1985), Alabama still follows the ancient brightline rule that an at-will employee can be terminated for any or no reason, generally holding that any such change should come from its Legislature. *See Hinrichs, supra*, 352 *So.*2d at 1131; *Hoffman–LaRoche, Inc. v. Campbell*, 512 *So.*2d 725, 749 (Ala.1987) (dissenting opinion). Indeed, the Supreme Court of Alabama has continued to adhere to this approach despite recognizing that it has "been applied to obtain harsh and inequitable results," and even though it has acknowledged that its adoption in American jurisdictions was the result of "the erroneous conclusion" set forth in a 19th Century treatise. *Meredith v. C.E. Walther, Inc.*, 422 *So.*2d 761, 762 (Ala.1982). The treatise referred to was Horace Gray Wood's *A Treatise on the Law of Master and Servant* (1877). The employment at-will doctrine stated in the Wood treatise was adopted in New York, *see Martin v. New York Life Ins. Co.*, 148 *N.Y.* 117, 42 *N.E.* 416, 417 (1895), and quickly took hold in other American jurisdictions at the end of the 19th Century. Many courts have since come to acknowledge that Wood's statement of the rule was not consistent with the rule found in the English common law and earlier American cases, which presumed a yearly hiring if the parties had not specified a period of duration and no evidence showed a contrary intent. *See* Arthur S. Leonard, *A New Common Law of Employment Termination*, 66 *N.C. L.Rev.* 631, 640–41 (1988).

employee for a discriminatory reason in violation of the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –28, or in a manner inconsistent with "explicit, contractual terms," *Bernard v. IMI Sys., Inc.,* 131 *N.J.* 91, 106, 618 *A.*2d 338 (1993), or when the employee has engaged in whistle-blowing activities protected by CEPA, *N.J.S.A.* 34:19–5, or if the employee's termination is "contrary to a clear mandate of public policy," *Pierce, supra,* 84 *N.J.* at 73, 417 *A.*2d 505. To date, our Supreme Court has recognized the viability of wrongful termination claims, based upon the *Pierce* public policy doctrine, in numerous instances. *See generally Mehlman v. Mobil Oil Corp.,* 153 *N.J.* 163, 181–87, 707 *A.*2d 1000 (1998). We need not, for present purposes, attempt to further survey the expanse of this public policy doctrine, or, for that matter, expand it further. It suffices to say that, because New Jersey does not adhere to the same inflexible employment at-will doctrine still followed in Alabama, the employee's claim of lost wages in a malicious prosecution action brought against a former at-will employer finds, in New Jersey, a more hospitable environment than existing in Alabama or any other state that continues to adhere to an inflexible employment at-will doctrine.

 That having been said, the availability of lost wages, where the alleged malicious prosecutor is also the former employer, remains a matter of first impression in New Jersey. While this circumstance is unusual, we find no reason to assume that it will not be repeated in the present economic climate. In weighing the same competing interests presented in *Kimberly–Clark,* we appreciate the difficulty of the conundrum presented to the Supreme Court of Alabama, but the vexing nature of the problem was predominantly generated by the Alabama Court's continued adherence to its inflexible employment at-will doctrine. Here, because of the exceptions to the employment at-will doctrine engrafted by our Legislature and by our courts, the relationship between our at-will doctrine and the right of a successful malicious prosecution plaintiff to be fully compensated is far more compatible. Because our employment at-will doctrine has been softened

to provide employees with remedies against their employers in numerous circumstances to avoid the oppression of the former rigid rule, we conclude that it should yield again in order to permit an employee, who may have been maliciously prosecuted by the employer, to obtain complete relief. In short, we conclude that even if Wal–Mart had a right to terminate plaintiff for good cause or no cause, *Erickson, supra,* 117 *N.J.* at 561, 569 *A.*2d 793, it had no right to maliciously prosecute her and, if plaintiff's cause of action is sustained, Wal–Mart should be held accountable for any damages caused by its allegedly wrongful actions. Accordingly, we conclude that lost wages may be recovered when plaintiff's termination is an incident of the malicious prosecution, even when the malicious prosecutor is the plaintiff's former at-will employer and would, for that reason, be under no other legal obligation to continue to employ plaintiff.

Here, the evidence contained in plaintiff's case-in-chief sufficiently satisfied—at least for purposes of defeating the motion for an involuntary dismissal—the requirement that there be a nexus, or causal connection, between the termination of her employment and the institution of the criminal proceedings. On April 13, 1999, Wal–Mart's representatives advised plaintiff that she was terminated—asking for her key, employee identification, and discount card—immediately after they and the police had finished interrogating her.[3] This occurred not only in the police station but in the

---

[3] Plaintiff testified that the following occurred while she was being interrogated by Officer Oliveira: "Oliveira stood up from his chair, and asked me to stand up, and he start[ed] reading my rights, and [he] handcuff[ed] me. He arrested me and handcuffed me on the chair, and he told me, you know, to 'Sit down there and think about it, and stop crying,' because it's not going to help me. And I said, 'Well, John, I'm not crying to look for sympathy. I'm crying because this is—I mean, you know the truth. Why are you doing this to me, guys?' I said, 'What do you want me to say,' I said, 'I made a mistake letting him install the radio in my car?' And then he immediately released me when I said that. *And then Chuck McDowell [Wal–Mart's district manager for loss prevention] immediately terminate[d] me on the spot,* as soon as they took it off, the handcuff on my hand. He advised me that I'm terminated, and he asked me to hand in my key and my badge and my discount card. And then they left, and the police

presence of law enforcement officials. The jury could conclude from these circumstances that the nascent criminal proceedings and the termination of plaintiff's employment with Wal–Mart were sufficiently linked to permit an award of damages in the form of lost wages. Whether such losses could be regarded "as a foreseeable, or normal, consequence of the criminal proceeding" would be for the jury to determine based upon the proofs submitted.

### IV

The trial judge also granted Wal–Mart's motion for an involuntary dismissal of plaintiff's common law claim that she was wrongfully terminated from her employment. Because the gravamen of this claim is subsumed either in the malicious prosecution action discussed above, or the CEPA claim that was properly dismissed for statute of limitations reasons,[4] we affirm the order that involuntarily dismissed this claim.

As we understand the claim, plaintiff asserts that her termination arose either from her pursuit of Wal–Mart's interests, in seeking to uncover the theft of company property by another employee, or that it was the product of some unspoken agenda designed to oust her from her position with Wal–Mart, as evidenced by the alleged malicious prosecution. The former theory would appear to fall within the parameters of CEPA. Since, however, plaintiff failed to assert this claim within one year of her termination, as required by *N.J.S.A.* 34:19–5, she cannot pursue it under the guise of a wrongful termination claim.

---

department proceeded to do the paperwork for my arrest for shoplifting which I didn't do." (Emphasis added).

[4] Plaintiff also pleaded a CEPA claim in her complaint. *N.J.S.A.* 34:19–5 requires the assertion of a CEPA claim within one year from the date of the violation. Because plaintiff was terminated on April 13, 1999 and did not file her complaint until November 15, 2000, Wal–Mart successfully moved for its dismissal. Plaintiff did not seek our review of that ruling.

It is arguable that *Pierce's* holding that the termination of an employee at-will for reasons contrary to public policy could also embrace a claim where the employee was discharged for no reason and simultaneously put to the task of defending a malicious criminal proceeding instituted by her employer. While the *Pierce* doctrine generally has application where the employee has been discharged for attempting to vindicate a public policy, it is not clear whether a viable wrongful termination claim exists when an employee is victimized by the employer's breach of the well-established public policy against the malicious institution of insubstantial criminal proceedings.[5] That is, plaintiff's wrongful termination claim generates the interesting question of whether an employer—who engages in conduct violative of *N.J.S.A.* 2C:28–4, the by-product of which is the discharge of its at-will employee—may be held liable for wrongfully terminating the employee who has only been victimized by that conduct. While we need not decide that issue here, we observe that it is arguably incongruous for an employee to possess a viable *Pierce* claim if discharged for complaining to authorities that the employer maliciously caused another employee to be prosecuted, *see Giudice v. Drew Chem. Corp.*, 210 *N.J.Super.* 32, 36, 509 *A.2d* 200 (App.Div.), *certif. denied,* 104 *N.J.* 465, 517 *A.2d* 448, 449 (1986), but not have a cause of action when "merely" victimized by similar conduct. In other words, *Giudice* suggests that A has a valid cause of action when terminated by C after having complained to law enforcement

---

[5] This public policy is well-established in our criminal statutes. For example, it is a crime of the fourth degree for a person to "knowingly give[ ] or cause[ ] to be given false information to any law enforcement officer with purpose to implicate another," *N.J.S.A.* 2C:28–4(a), and a disorderly persons offense for a person to "report[ ] or cause[ ] to be reported to law enforcement authorities an offense or other incident within their concern knowing that it did not occur," or to "[p]retend[ ] to furnish or cause[ ] to be furnished such authorities with information relating to an offense or incident when [that person] knows he has no information relating to such offense or incident," *N.J.S.A.* 2C:28–4(b). Whether plaintiff's allegations relating to the conduct of Wal–Mart fits any of these categories is not greatly relevant. What is relevant is that these statutory provisions announce that there is a public policy against engaging in the type of conduct normally associated with malicious prosecutions.

officials that C maliciously prosecuted B. *Ibid.* Since the underlying public policy is the same in both circumstances, it would appear unlikely, but we do not decide, whether A has a valid cause of action for wrongful termination when A is both terminated and maliciously prosecuted by C. We are aware of only one jurisdiction that has considered this issue. In *Hodges v. Gibson Prod. Co.*, 811 *P.*2d 151, 167 (Utah 1991), a divided court held that Utah's "declared policy ... to keep the criminal law inviolate and that it may not be used for achieving purposes other than bringing an offender to justice" permitted an at-will employee to recover on his wrongful termination claim because of the employer's malicious institution of a criminal proceeding against the employee.

We need not reach this issue because such a wrongful termination claim would, in our view, require proof that the employer maliciously prosecuted the employee; that is, the wrongful termination claim, if a valid cause of action, subsumes all the elements of plaintiff's malicious prosecution claim and, thus, its continued pursuit in this civil action would be superfluous. In addition, in this setting, the wrongful termination claim, if viable, would not create a platform for any other or greater damages than permitted if plaintiff succeeds on her malicious prosecution claim; the damages available in this alleged wrongful termination claim mirror those that are available in this malicious prosecution claim.[6] Accordingly, in these peculiar circumstances, we conclude that the trial judge did not err in ordering an involuntary dismissal of the wrongful termination claim. While the basis for our affirmance differs from that outlined by the trial judge, we are satisfied that, under the circumstances, the redundancy of the further pursuit of this claim could only have the potential for confusing the jury

[6] In other circumstances, this may not be so, since, as a general matter, wrongful termination claims also give rise to the potential that a plaintiff could be reinstated to his or her prior employment. That same relief is also available in CEPA claims. *See N.J.S.A.* 34:19–5(c). But, here, plaintiff has not sought reinstatement. As a result, her damage claim in the malicious prosecution claim is precisely the same as her damage claim in the wrongful termination claim.

without providing any concomitant benefit to the adjudication of these claims.

V

For these reasons, we reverse the involuntary dismissal of the malicious prosecution claim and remand that claim for a new trial, and we affirm the involuntary dismissal of the wrongful termination claim.