**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3262-18T3

TORA EVANS,

     Plaintiff-Appellant,

v.

DAVID PETRACCA, individually
and in his capacity as a law
enforcement officer with the Ocean
County Prosecutor's Office and
TIMOTHY MEIER, individually
and in his capacity as a law
enforcement officer with the Ocean
County Prosecutor's Office,

     Defendants-Respondents.

_____

Submitted February 25, 2020 – Decided March 6, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3092-16.

Schiller, Pittenger and Galvin, PC, attorneys for appellant (Robert B. Woodruff, of counsel and on the briefs; Jay Bently Bohn, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent David Petracca (Sookie Bae, Assistant Attorney General, of counsel; Ashley L. Costello, Deputy Attorney General, on the brief).

Hiering, Gannon & McKenna, attorneys for respondent Timothy Meier (Michael J. McKenna, on the brief).

PER CURIAM

Plaintiff Tora Evans was arrested for a crime he did not commit all because he happened to be in the vicinity of other criminal conduct. He remained incarcerated for six weeks before making bail; in the meantime, he lost his job and claims in this suit he was unable to resume his position as a certified nursing assistant because of the arrest. As a result of these unfortunate events and consequences, plaintiff brought this action against two law enforcement officers – defendants David Petracca and Timothy Meier – whose actions and statements led to plaintiff's arrest. The trial judge granted summary judgment, concluding, among other things, defendants were entitled to qualified immunity. We are constrained to agree and affirm.

The evidence put before the trial judge in the moving and opposing summary judgment papers reveals that the Ocean County Prosecutor's Office was conducting a narcotics investigation in March 2015. Their principal target was B.A. (Anderson, a fictitious name), who was believed to be a large-scale

heroin distributor. As part of this operation, Meier was instructed to conduct surveillance of a barbershop on River Avenue in Lakewood on March 18, 2015, because it was believed – based on an intercepted telephone call to Anderson – that a transaction was about to take place between Anderson and an unidentified male at the barbershop. Other officers, who were conducting surveillance at Anderson's residence, watched Anderson retrieve an item from one of his vehicles and place it in his jacket pocket; he then entered another vehicle and drove to the barbershop. Approximately fifteen minutes later, a second telephone call was intercepted during which an unidentified male advised Anderson he was at the barbershop; Anderson responded that he was arriving.

Defendant Meier was seated in an unmarked vehicle across the street from the barbershop when Anderson arrived and parked next to a 2008 white Lexus. He then observed Anderson and the unidentified male driver of the white Lexus engage in a brief conversation after which both entered the building in which the barbershop was located. We pause in our description of the police activities to note that the barbershop was not in a stand alone building. Instead, it was located in a building that also housed a check cashing company; patrons of both businesses used the same door to enter.

3

Moments later, Meier observed both Anderson and the unidentified male exit the building and return to their vehicles. He took photographs of the unidentified male as he left the building.

On returning to headquarters, Meier was shown two Department of Motor Vehicle photographs that contained no personal identifiers. The photographs depicted two different males. Meier identified the males as the individuals he observed going in and out of the building that housed the barbershop. These individuals were determined to be Anderson and plaintiff Tora Evans. Meier later prepared a report that detailed his observations outside the building.

Defendant David Petracca, a detective of the Ocean County Prosecutor's Office, served as the individual primarily responsible for preparing affidavits to support the issuance of warrants regarding the investigation. In preparing an affidavit in support of a warrant for plaintiff's arrest, Petracca asserted that he relied on information provided by others assigned to the task force, including the intercepted telephone calls, the surveillance of Anderson and the building housing the barbershop, and Meier's report regarding his surveillance and identification of plaintiff as the individual he observed at the building on March 18, 2015.

A-3262-18T3

Twice in his affidavit, Petracca asserted he was "familiar with the voice[]" of plaintiff; in fact, he was not. Petracca testified at his deposition that he had never heard plaintiff's voice. In his affidavit, Petracca described the intercepted telephone calls and, without having obtained information about the subscriber of the telephone number of those calls attributed to the unidentified male,[1] Petracca asserted in his affidavit that plaintiff was the otherwise unidentified caller who had sought to purchase heroin from Anderson. He also recounted the surveillance of Anderson from his residence to the barbershop and his brief conversation with the driver of the white Lexus before "both [Anderson] and Tora Evans enter[ed] into the barber shop and, moments later, both subjects exited and return[ed] to their respective vehicles."

Based on this affidavit, a judge found probable cause for plaintiff's arrest. Upon learning of the warrant, plaintiff appeared at the Ocean County Prosecutor's Office and was arrested. He was charged with conspiracy to possess with the intent to distribute a quantity of heroin in excess of five ounces, N.J.S.A. 2C:35-5(b)(1); N.J.S.A. 2C:5-2, and bail was set at $150,000 without a ten percent option.

---

[1] Petracca testified at his deposition that a subpoena was subsequently issued for that information, which confirmed that plaintiff was <u>not</u> associated with that telephone number.

Plaintiff remained incarcerated in the Ocean County jail for approximately six weeks before he was able to post bail and secure his release. The charges were voluntarily dismissed by the State in October 2016.

Plaintiff professed his innocence throughout these events. He never denied his presence on River Avenue in Lakewood on March 18, 2015. To the contrary, he acknowledged he stopped there to cash his paycheck at the check cashing business located in the same building, which, as noted earlier, utilizes the same entrance as the barbershop. At his deposition, plaintiff identified a paycheck that reflects it had been processed at 1:01 p.m. on March 18, 2015. Plaintiff denied having any interaction with Anderson.

A month after the State dismissed the criminal charges, plaintiff filed a complaint against Petracca and Meier, alleging violations of his civil rights under both the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2; he also pleaded the common law torts of false arrest and imprisonment and malicious prosecution. Prior to filing an answer, Petracca unsuccessfully moved to dismiss pursuant to Rule 4:6-2(e). Later, both he and Meier moved for summary judgment. The judge granted those motions, concluding that, when viewed in the light most favorable to plaintiff, the facts

demonstrated defendants' entitlement to qualified immunity and required the dismissal of the torts alleged.

In appealing, plaintiff argues the judge erred in finding defendants were entitled to qualified immunity and that the factual record failed to support his claims of malicious prosecution and false arrest and imprisonment. We reject plaintiff's arguments and affirm. We turn first to plaintiff's civil rights claim and the application of qualified immunity.

To establish a claim under our Civil Rights Act, a plaintiff must prove that the defendant, acting under color of state law, deprived him of a constitutional or statutory right. Wildoner v. Borough of Ramsey, 162 N.J. 375, 385 (2000). The doctrine of qualified immunity, however, protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Brown v. State, 230 N.J. 84, 97-98 (2017) (citing Morillo v. Torres, 222 N.J. 104, 116 (2015)). Qualified immunity shields from liability all public officials except those who are "plainly incompetent or those who knowingly violate the law." Id. at 98 (citing Morillo, 222 N.J. at 118). A defendant's entitlement to qualified immunity presents a question of law to be

A-3262-18T3

decided as early in the proceedings as possible, "preferably on a properly supported motion for summary judgment." Bayer v. Twp. of Union, 414 N.J. Super. 238, 263 (App. Div. 2010) (quoting Wildoner, 162 N.J. at 387).

Qualified immunity attaches when law enforcement officers are able to prove they acted with probable cause or that "a reasonable police officer could have believed in its existence." Kirk v. City of Newark, 109 N.J. 173, 184 (1988). Probable cause is "a well grounded suspicion that a crime has been or is being committed," State v. Waltz, 61 N.J. 83, 87 (1972), and exists "where the facts and circumstances within … [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed," State v. Moore, 181 N.J. 40, 46 (2004) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

In determining whether probable cause exists, a court must look to the totality of the circumstances and view those circumstances from the standpoint of an objectively reasonable police officer. State v. Basil, 202 N.J. 570, 585-86 (2010) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983); Maryland v. Pringle, 540 U.S. 366, 371 (2003); Moore, 181 N.J. at 46). When probable cause is an issue, the trial judge should decide "whether probable cause existed, and if not,

whether the [defendant] could reasonably have believed in its existence." Schneider, 163 N.J. at 359.

In granting defendants' motions for summary judgment, the trial judge found both Petracca and Meier were entitled to qualified immunity in their individual capacities as governmental officials because probable cause existed for the issuance of the warrant for plaintiff's arrest. The judge based his view of the evidence about probable cause on the telephone interceptions, the surveillance of Anderson, Meier's surveillance report, and Meier's identification of plaintiff as the individual he observed on March 18, 2015. A reasonable police officer could have believed in the existence of probable cause in these circumstances even though it turned out that plaintiff's presence was merely coincidental and, as shown, most unfortunate. To be sure, Petracca alleged in his affidavit that he was "familiar" with plaintiff's voice when he later acknowledged he had never heard plaintiff's voice. But that inaccurate assertion could not have had much influence on the criminal judge's probable cause determination that led to plaintiff's incarceration. In other words, had Petracca never added that inaccurate comment, it seems highly likely that the criminal judge still would have found probable cause because of Meier's surveillance and his identification of plaintiff.

As for Meier, the trial judge recognized that he was advised by a superior officer that an imminent drug transaction was to take place at the barbershop. While conducting surveillance, Meier observed both Anderson and another male arrive at the location, engage in brief conversation and enter the building in which the barbershop was located. Moments later, Meier observed both Anderson and the unidentified male exit the building and return to their vehicles. Meier later identified the unidentified male as plaintiff by examining Department of Motor Vehicle photographs. From an objective perspective, when combining the imminent drug transaction discussed on the intercepted telephone call, the time and location to meet, and the presence of Anderson and plaintiff at this same location at the very time Anderson and another had discussed meeting, the trial judge properly determined that a reasonable police officer could have had probable cause to believe a crime had been committed by plaintiff.

For these reasons, we agree there was no genuine factual dispute about defendants' entitlement to qualified immunity.

The judge also correctly determined that defendants were entitled to summary judgment on the malicious prosecution claim. To sustain such a claim, a plaintiff must prove: (1) "the criminal action was instituted by the defendant

against the plaintiff," (2) "it was actuated by malice," (3) "there was an absence of probable cause for the proceeding," and (4) "it was terminated favorably to the plaintiff." Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003). Such claims are generally disfavored, but if a plaintiff can establish a prima facie case, then "one who recklessly institutes criminal proceedings without any reasonable basis should be [held] responsible for such irresponsible action." Epperson v. Wal-Mart Stores, Inc., 373 N.J. Super. 522, 534 (App. Div. 2004) (quoting Lind v. Schmid, 67 N.J. 255, 262 (1975)).

Though a plaintiff must establish each element, "[t]he essence of the cause of action is lack of probable cause." Lind, 67 N.J. at 262. The plaintiff "must establish a negative, namely, that probable cause did not exist." Id. at 263. The trial judge correctly found that plaintiff presented sufficient evidence to meet prongs one and four, as a criminal action was instituted against him[2] and was

---

[2] The first prong is met by proof that the defendant took "'some active part in instigating or encouraging the prosecution' or 'advis[ing] or assist[ing] another person to begin the proceeding, [or by] ratif[ying] it when it is begun in defendant's behalf, or [by] tak[ing] any active part in directing or aiding the conduct of the case.'" Epperson, 373 N.J. Super. at 531 (quoting Prosser and Keeton on Torts, § 119 at 872 (5th ed. 1984)). The record reflects that information provided by both defendants was instrumental in causing the criminal proceeding to be commenced against plaintiff.

11

terminated in his favor.[3] The judge, however, determined that plaintiff could not demonstrate defendants' actions were motivated by malice or that there was a lack of probable cause in seeking to obtain the warrant for his arrest.

We agree with the judge's analysis on both the second and third prongs. The judge properly determined there was insufficient evidence to support an allegation that defendants acted with malice. In this regard, we note that proof of malice does not require proof that defendants acted malevolently or with personal ill will toward the plaintiff. Epperson, 373 N.J. Super. at 532. Rather, malice is "the intentional doing of a wrongful act without just cause or excuse." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 395 (2009) (quoting McFadden v. Lane, 71 N.J.L. 624, 630 (E. & A. 1905)). That requirement may be inferred "from the finding that the defendant had neither probable cause for the criminal complaint nor a reasonable belief in probable cause." Jobes v. Evangelista, 369 N.J. Super. 384, 398 (App. Div. 2004).

---

[3] The fourth element, which requires proof that the criminal proceeding was terminated in favor of the accused, focuses on whether the termination was dispositive of the accused's innocence of the crime charged. Rubin v. Nowak, 248 N.J. Super. 80, 83 (App. Div. 1991). Criminal proceedings are terminated in favor of an accused by "the formal abandonment of the proceedings by the public prosecutor." Ibid. (quoting Restatement (Second) of Torts § 659 (Am. Law Inst. 1977)). The fourth element was satisfied because the State voluntarily dismissed the charges against plaintiff.

In finding plaintiff could not demonstrate that defendants' actions were motivated by malice, the judge relied on the fact that neither Petracca nor Meier knew who plaintiff was prior to this investigation and prosecution, and their connection of plaintiff to their narcotics investigation was purely mistaken. Regardless of the generous view of the evidence plaintiff is permitted at the summary judgment stage, we agree there was no evidence that would have supported an inference that defendants acted with malevolence or with personal ill will toward plaintiff. This remains so even though the evidence supports plaintiff's allegation that Petracca inaccurately claimed familiarity with plaintiff's voice in the affidavit that led to his arrest. The remainder of the affidavit reveals that Petracca relied on the intercepted telephone calls, the surveillance of Anderson, Meier's surveillance report, and Meier's identification of plaintiff as the individual he observed at the barbershop location as his basis for asserting probable cause. And though plaintiff alleged that Meier falsely claimed to have seen him converse with Anderson at the location – and we assume plaintiff is correct in this regard for purposes of reviewing the summary judgment – Meier merely confirmed that, based on his surveillance observations, plaintiff was the same individual he had observed and photographed outside the barbershop. Thus, the trial court properly determined there was insufficient

evidence to support plaintiff's allegation that defendants acted with malice.  But for these inaccuracies – no matter how characterized – the thrust of the factual submission that led to the criminal judge's issuance of the arrest warrant was based on other facts that the officers heard or observed.  Viewing the record in the manner prescribed by the Brill[4] standard, we agree with the trial judge that plaintiff failed to make a prima facie showing of actual malice.

The third element of a malicious prosecution claim requires that the plaintiff demonstrate probable cause did not exist. Wildoner, 162 N.J. at 389; Lind, 67 N.J. at 262-63.  It is well established that probable cause exists if, at the time of the arrest, "the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."  Moore, 181 N.J. at 46; see also Waltz, 61 N.J. at 87 (describing probable cause as a "well grounded" suspicion that a crime has been or is being committed).  Again, for reasons already discussed, we conclude that the trial judge properly found probable cause existed at the time of the arrest even though hindsight reveals the officers were mistaken in making the case for plaintiff's arrest.

---

[4]  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

14

We similarly reject plaintiff's arguments about his claim that he was falsely arrested and imprisoned. Such a claim requires proof that probable cause was lacking, see Mesgleski v. Oraboni, 330 N.J. Super. 10, 24 (App. Div. 2000), and we have already determined that the officers possessed probable cause to seek plaintiff's arrest, which led to his incarceration. In short, the law does not provide a viable cause of action in these circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3262-18T3